No. 51,791

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee,* v. J<small>OSEPH</small> W. B<small>RIGHT</small>, *Appellant.*

(623 P.2d 917)

Opinion filed January 27, 1981.

*Bruce R. Powell,* of Barnett & Lerner, Chartered, of Kansas City, argued the cause and was on the brief for the appellant.

*Michael Grosko,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by Joseph W. Bright from his conviction of the sale of cocaine, a narcotic drug, in violation of K.S.A. 1979 Supp. 65-4127a. On appeal, Bright contends that the trial court erred: (1) in refusing to strike the testimony of the State's chemist; (2) in overruling defendant's motion to dismiss at the close of the State's evidence; (3) in refusing to allow the defendant to call certain witnesses; and (4) in allowing the prosecutor to comment in closing argument that the defendant could have examined State's Exhibit No. 1, the cocaine.

The first and second points both involve the testimony of Dennis Doms, a chemist employed at the Regional Crime Lab in Independence, Missouri, who was called as the first witness for the State. The witness graduated from the University of Missouri with a degree in chemistry, and he had thereafter taken specialized courses and attended seminars. He estimated that he had made in excess of 10,000 chemical examinations, over 1000 of them being for the purpose of determining whether or not a substance was cocaine. He had previously testified in court as an expert approximately 100 times. In the regular course of his duties he received a marked, sealed envelope, State's Exhibit No. 1, opened it, and made an analysis of a small part of the white powder which it contained. This analysis was made through use of a gas chromatograph mass spectrophotometer (GCMS) and an ultraviolet spectra voltometer. The GCMS was used to determine whether the substance contained cocaine, and the UV spectra voltometer was used to determine what percentage of the substance, by weight, was cocaine. Doms testified that the tests disclosed that the substance contained 25% cocaine. The GCMS produces "cellographic reporting" on light sensitive paper, which is semi-permanent; Doms did not keep these papers, but threw them away.

Defendant contends that the trial court erred in refusing to strike the evidence of witness Doms because of his deliberate destruction of what defendant designates as "crucial records"—

the "cellographic reporting" which the GCMS emits. One primary difficulty with this argument is that the record does not disclose whether these charts were capable of being preserved without change, or whether they would be of value in corroborating or challenging the expert's conclusions at a later date. The witness stated that they were "semi-permanent," whatever that means. Defendant's expert testified that the machine emits two printouts simultaneously, one being a graph and the other telling what time a certain peak came off and how much of it there is. The feasibility of retaining these and their value at a later date was not developed.

Prior to trial, defendant moved for disclosure of reports in possession of the prosecutor, and the court sustained that motion. The State responded by disclosing its entire file, which contained a one-page report from the chemist giving little more than his conclusion that the substance tested was 25% cocaine. The prosecutor did not have possession of nor did either party have knowledge of the GCMS readouts. Defendant now claims that the State's failure to furnish and disclose those prior to trial was a violation of the court's order and K.S.A. 22-3212(1)(b), and that the trial court should have stricken the testimony pursuant to K.S.A. 22-3212(7).

K.S.A. 22-3212(1)(b) and (7) read as follows:

"(1) Upon motion of a defendant the court may order the prosecuting attorney to permit the defendant to inspect and copy or photograph any relevant . . . (b) results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case, or copies thereof, the existence of which is known, or by the exercise of due diligence may become known, to the prosecuting attorney . . . .

. . . . .

"(7) If, subsequent to compliance with an order issued pursuant to this section, and prior to or during trial, a party discovers additional material previously requested or ordered which is subject to discovery or inspection under this section, he shall promptly notify the other party or his attorney or the court of the existence of the additional material. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this section or with an order issued pursuant to this section, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

The readouts were nonexistent; they were destroyed when the testing was completed. The prosecutor had no knowledge that

they had ever existed, and under the circumstances of this case we do not think that lack of knowledge was due to a lack of diligence. The fact that the chemist did not have the readouts available when he testified goes to the weight of his testimony, not its admissibility.

Defendant also cites cases decided under K.S.A. 22-3213, referred to as the "Little Jencks Act," which makes available to a defendant prior statements of prosecution witnesses. The difficulty with this line of argument is that the machine readouts were not "statements" as that term is defined in K.S.A. 22-3213(4)(a). The cases cited are not persuasive.

The trial court held a pretrial conference and entered a formal pretrial order. The State reported that it had in its possession a chemical analysis report, and that report was available to defendant's counsel since "the State's file is open." We encourage the holding of such conferences as an aid to the speedy, fair, and just disposition of criminal cases. Agreements made at such conferences should be included in the written order, as they were here, and those agreements should be enforced. Here, however, there was no violation by the State of the pretrial order; the State opened its entire file to defense counsel's inspection. We conclude that the testimony of the State's chemist was properly received, and that the trial court did not err in refusing to strike it.

Defendant's motion to dismiss at the close of the State's evidence was based upon the claim that the State failed to prove that State's Exhibit No. 1 was cocaine. What we have said above disposes of defendant's principal arguments in this regard. He does raise one additional argument: that the evidence failed to establish a clear chain of custody to the alleged cocaine, Exhibit No. 1. The only break in the chain was the transfer of the exhibit from the Metro Squad drug safe to the safe at the testing lab. The packet was heavily sealed, marked, initialed and dated, it was fully identified, and there was no evidence of tampering. The law governing this area was recently stated in *State v. McGhee*, 226 Kan. 698, 703, 602 P.2d 1339 (1979), where we said:

"The rule is that a party who offers an object into evidence must show that it is reasonably certain that there have been no material alterations of the object since it was first taken into custody. It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial

court. It is not necessary that all possibility of its being tampered with should be excluded. . . . [This] test for chain of custody has been characterized as 'reasonable certainty that no material alterations of the objects occurred.'

". . . Any deficiency in the chain of custody should go to the weight rather than to the admissibility of the evidence."

We find no error in the admission of the exhibit; any deficiency in the evidence of chain of custody went to the weight, not the admissibility. The motion to dismiss was properly overruled. *State v. Tillery,* 227 Kan. 342, 345, 606 P.2d 1031 (1980).

The next contention is that the trial court erred in refusing to allow defendant to call certain witnesses. At the pretrial conference, defense counsel agreed to give the State the names of defense witnesses 10 days before trial, and that agreement was made a part of the pretrial order. On the first day of trial, defense counsel indicated in open court that he would perhaps call two or three experts, between ten and fifteen lay witnesses, and perhaps fifty or sixty character witnesses. On the following day, he disclosed to the prosecutor that he intended to call a chemist, Dr. Paul Tocci of Miami, Florida, as an expert witness. After the close of the State's evidence, the State objected to *any* defense witnesses since the State had not received notice of *any* defense witnesses prior to trial, and as of that moment the State had been furnished with the name of only one defense witness, Dr. Tocci, in spite of the requirement set forth in the pretrial order.

Defense counsel then made no explanation to the trial court, and now makes no explanation to this court, as to why no defense witnesses were disclosed prior to trial as required by the pretrial order. Counsel indicated that the 60 character witnesses would not be necessary; but the defendant wished to call Dr. Tocci, Martha Lemon (endorsed as a witness by the State), Roger P. Gibson, who would testify as an expert about police procedure and federal drug enforcement procedures, and approximately five friends of the defendant, whose names counsel did not know, who would "tell this jury and Court why police officers were lying." Counsel later said that one of the five would testify that he had seen one of the State's witnesses insert a hypodermic needle in his arm and had observed marks on his arm (which police officers denied seeing) and the other four would testify as to the gullibility of the defendant, his propensity to be entrapped. The trial court ruled that defendant could call Dr. Tocci and Martha Lemon, but held that since this was not a federal case, the

testimony of Mr. Gibson would not be relevant. Finally, the court said: "You pick your best three." Defendant called Dr. Tocci, Martha Lemon, who testified as to the defendant's gullibility, and Tim Kenny, who testified that he had seen the State witness shoot cocaine, and that he had seen scars on his arm. Defendant then rested.

Defendant now contends that the trial court violated his constitutional right to call witnesses in his behalf by limiting the number of witnesses defendant was permitted to call.

Pretrial conferences are authorized by statute in criminal cases. Our statute, K.S.A. 22-3217, is based on Rule 17.1, F.R. Crim. P., the substance of which should have been familiar to the Florida attorney who served as principal trial counsel. As we indicated earlier in this opinion, we encourage the holding of pretrial conferences; when they are held, either in civil or criminal cases, both parties are bound by the agreements made at the conference and included by the judge in the order entered at the conclusion of the conference. Trial counsel apparently did not consider the order binding on his side of this lawsuit. We disagree. Defendant was obligated to disclose his witnesses prior to trial, and for some reason unknown to us did not do so.

As to the responsibility of trial courts in the area of expert witnesses, we have frequently stated:

" 'The qualifications of an expert witness and the admissibility of his testimony are [matters] within the sound discretion of the trial judge.' " *State v. Peoples,* 227 Kan. 127, 130-131, 605 P.2d 135 (1980). *Plains v. Transp. of Kan., Inc. v. King,* 224 Kan. 17, 21, 578 P.2d 1095 (1978); *Spraker v. Lankin,* 218 Kan. 608, 613, 545 P.2d 352 (1976); *State v. McClain,* 216 Kan. 602, 606, 533 P.2d 1277 (1975).

The record before us with reference to the trial court's ruling that the testimony of the proffered expert on "police procedure and federal drug enforcement procedures," Roger P. Gibson, would not be relevant, contains no more than we have already set forth above. Perhaps the trial judge was familiar with the qualifications of the proposed witness; perhaps not. Perhaps defendant wished to call the witness to refute certain testimony by police officers in this case; perhaps not. An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, we presume that the action of the trial court was proper. *State v.*

*Pettay,* 216 Kan. 555, 557, 532 P.2d 1289 (1975). On the meager record presented by the appellant on this issue, we are unable to find error in the trial court's ruling that the testimony of this expert would not be relevant.

The trial court permitted defendant to call his best witnesses in three areas: the chemist, to raise doubt as to the State's chemical analysis of the "white powder"; Mr. Kenny, to cast doubt upon the reliability of the "cooperating individual" and to cast doubt upon the veracity of police witnesses; and Martha Lemon, to establish the defendant's naivete and gullibility. The witnesses whom defendant was not allowed to call would have testified, according to counsel, that defendant was gullible and easily led. The testimony would have been cumulative. As Justice Rousseau Burch observed in *State v. Elftman,* 116 Kan. 214, 230, 226 Pac. 795 (1924), the authority of a trial court to limit the number of witnesses upon a single issue is undoubted. Also, in *State v. Scott,* 117 Kan. 303, 322, 235 Pac. 380 (1924), we held that the number of witnesses that a defendant may call to impeach an important State witness rests in the sound discretion of the trial court. In *Elftman,* we held that the trial court did not abuse its discretion by limiting to ten the number of witnesses the defendant might call to establish his good character; in *Scott,* we held that the trial court erred in limiting to five the number of witnesses the defendant might call to impeach a particularly important and critical prosecution witness. In the case before us, we think the trial court erred, even in view of the defendant's violation of the pretrial order, in limiting defendant's case so severely. Merely because the four defense witnesses would have given cumulative testimony does not justify such severe action.

This brings us to the critical issue: Did the trial court commit *reversible* error in refusing to permit the defendant to call the four witnesses for the purpose of further establishing his gullibility? If the shoe were on the other foot, as it usually is, and if it were the prosecution which had failed to disclose and endorse witnesses, and if the trial court had refused to permit the State to endorse and call witnesses, we would have much case law to guide us. The prosecution in this state has historically been required to endorse the names of its witnesses upon the information, so that the accused is made aware of the State's potential witnesses long prior to trial. See K.S.A. 1980 Supp. 22-3201(6);

K.S.A. 62-802 (Corrick); G.S. 1949, 62-802; R.S. 1923, 62-802; and G.S. 1868, ch. 82, § 67. We have held many times that the matter of late endorsement of witnesses by the State is a matter within the sound discretion of the trial court; the test is whether the defendant's rights have been prejudiced. *State v. Bryant,* 227 Kan. 385, 387, 607 P.2d 66 (1980). The trial court's discretion, however, has usually been exercised by granting the State permission to make late endorsement of witnesses. We have examined the many cases decided throughout the years under the statutes mentioned, and find it rare indeed that a trial court has denied the State's motion to endorse witnesses even up to and during trial. For a listing of the cases, see 4 West's Kansas Digest, Criminal Law § 628, pp. 169-178. We have generally approved the late endorsement unless the defendant was surprised and the testimony was critical. For such a case, see *State v. Stafford,* 213 Kan. 152, 164, 165, 515 P.2d 769 (1973), *modified and rehearing denied,* 213 Kan. 585, 518 P.2d 136 (1974).

There is no reciprocal statutory requirement that defendant disclose the names of defense witnesses prior to trial; alibi witnesses are the only exception; those must be disclosed. K.S.A. 1980 Supp. 22-3218. However, where the State goes further than it is required to go with respect to pretrial discovery and opens its entire file to the defense, the parties frequently agree that defense witnesses will be disclosed to the State prior to trial. When such an agreement is made of record, it should be enforced. The trial court, of course, has authority to modify pretrial orders to prevent manifest injustice. See K.S.A. 22-3217; K.S.A. 60-216; and *State v. Quick,* 226 Kan. 308, 311, 597 P.2d 1108 (1979). The court should employ the same standard in determining whether to permit the defendant to call undisclosed witnesses, or those whose disclosure was untimely, as it employs when determining whether to allow the State to endorse witnesses out of time: It should exercise its sound discretion.

Some states by statute or court rule provide for reciprocal disclosure of witnesses by the prosecution and the defense in criminal cases. The courts of those states generally hold that the sanctions to be imposed upon a defendant who fails to provide a witness list is left to the sound discretion of the trial court. See *Adams v. State,* 336 So. 2d 1236 (Fla. Dist. Ct. App. 1979); *State v. Smith,* 123 Ariz. 243, 252, 599 P.2d 199 (1979). The Florida

court in *Adams,* however, reversed a trial court order precluding a defendant from calling any witnesses who had not been disclosed to the prosecutor, quoting *Smith v. State,* 353 So. 2d 205, 207 (Fla. Dist. Ct. App. 1977), as follows:

"[T]his discretion [to exclude witnesses] may be exercised only after the court has made an adequate inquiry into all of the surrounding circumstances, and failure of the trial court to inquire into these circumstances constitutes error. . . . The inquiry should at least cover whether the violation was inadvertent or willful, whether it was trivial or substantial, the extent of prejudice to the state, and the feasibility of rectifying any prejudice by some means short of excluding the witness. . . . The importance of the omitted witnesses should also . . . be taken into consideration." 366 So. 2d 1236.

Similarly, the Arizona Supreme Court in *State v. Smith,* said:

"Pursuant to 17 A.R.S., Rules of Criminal Procedure, rule 15.7, the trial court is authorized to impose sanctions upon a party who fails to comply with any of the provisions of rule 15. One such sanction is the preclusion of an undisclosed witness' testimony. In general, the appropriate sanction for noncompliance with rule 15 is left to the sound discretion of the trial court. . . .

"The trial court, however, should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible, since the Rules of Criminal Procedure are designed to implement, and not to impede, the fair and speedy determination of cases. . . . Prohibiting the calling of a witness should be invoked only in those cases where other less stringent sanctions are not applicable to effect the ends of justice. . . . To be effective, discovery rules must be applied with equal force to both parties." 123 Ariz. at 252.

In the case before us the facts of the narcotics "buy" were clear and undisputed. The agent-purchaser told Bright that he would like to purchase a gram of cocaine; Bright stated that it would cost $100. The agent gave Bright the money; Bright left his place of business, drove off in a car, returned in about 20 minutes, and gave the agent a white paper containing the powdered narcotic. The witnesses whom defendant wished to call would not have disputed or thrown light on that transaction. The "cooperating individual" or "informer" (whom witness Kenny once saw "shoot" cocaine) merely introduced the agent to Bright; though present during the transaction, he is not shown to have said anything. He was not called as a witness by either party. Under the limited factual situation of this case, considering the proposed testimony of the four witnesses, considering the strength of the State's case, and considering the utter failure of the defendant to disclose witnesses or to explain his failure to do so, we conclude that the trial court's exclusion of those witnesses was not reversible error.

We do, however, wish to lay down rules for future guidance of the trial courts, should similar problems again arise. If a defendant has been required by pretrial or discovery order to disclose defense witnesses prior to trial and fails to do so, and attempts to call a witness or witnesses not disclosed, then in ruling on prosecution objections the trial court should:

(1) Inquire why the witness or witnesses were not disclosed;

(2) determine when the witness first became known to defense counsel, and whether the nondisclosure was willful or inadvertent;

(3) determine whether the proposed testimony is trivial or substantial, whether it goes to an important or minor issue;

(4) determine the extent of prejudice to the State, and the importance of the witness to the defense;

(5) determine any other relevant facts;

(6) grant the State a recess if prejudice can be avoided or reduced by such action; and

(7) avoid imposing the severe sanction of prohibiting the calling of the witness if at all possible. This should be viewed as a last resort.

Finally, defendant contends that the prosecutor committed prejudicial error during closing argument. We have examined the argument and find no impropriety meriting reversal.

The judgment is affirmed.