(667 P.2d 898)
No. 54,629

STATE OF KANSAS, *Appellee*, v. HERBERT DOUGLAS, JR., *Appellant*.

Opinion filed August 11, 1983.

*Howard Washburn,* of Kansas City, for the appellant.

*Mary Ann Slattery,* assistant district attorney, *Nick A. Tomasic,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before FOTH, C.J., SPENCER and PARKS, JJ.

SPENCER, J.: This is a direct appeal by defendant Herbert Douglas, Jr., from his conviction by jury of aggravated battery (K.S.A. 21-3414).

The crime for which defendant stands convicted occurred at about 12:45 a.m. on December 3, 1981. At the pretrial conference conducted December 30, 1981, defendant indicated he would rely on an alibi defense and supplied the names of three witnesses in support of his alibi. The trial commenced on Monday, February 22, and continued through Thursday, February 25, 1982, at the conclusion of which defendant was found guilty. His motion for new trial was overruled and defendant was sentenced for a term of not less than five nor more than twenty years. The firearm sentencing statute (K.S.A. 21-4618) was employed.

On February 23, at what appears from the record to have been about midmorning, it was determined the victim of the alleged shooting had not appeared. After some discussion and inquiry, the court went into recess until 9:00 a.m. the following day to permit the State to locate that witness. On February 24, the victim did appear and testified. The State then rested its case. It was at this point that defense counsel announced to the court that of the three alibi witnesses named at the pretrial conference, only one, Reuben L. Thurman, had responded to subpoena. He

also informed the court that in talking to those witnesses he had discovered another alibi witness by the name of Melvin Anderson:

"And Melvin Anderson told me that he was playing dominos with this defendant from early morning hours, you know, midnight or one minute after midnight December 3rd, you know, until three or four in the morning down at 1950 North Hallock."

Defense counsel requested permission to call this witness, explaining to the court he had known these people only by such names as "Old Dude" and "Sonny," and he had encountered difficulty in locating the alibi witnesses by their correct names. The State entered an objection and the court ruled:

"I'm going to deny the request to endorse the witness. I'm going to hold both parties to the pre-trial conference which number 24 in the pre-trial conference says:
"Defense counsel will state the name of his witnesses seven days before trial."

Defense counsel then sought a continuance of the trial in order to locate and secure the appearance of the two alibi witnesses originally named. The motion for continuance was denied. However, the trial court did suggest the possibility of a bench warrant to be issued for their arrest.

A perusal of the record indicates that at the time in question Melvin Anderson, also known as "Sonny," was present in the house at 1950 North Hallock in Kansas City. It was at that address defendant claimed to have spent the evening of December 2 and the early morning of December 3, 1981, in the presence of "Reuben, Debra Green, George Suttington, Melvin Anderson, a few other people."

Reuben L. Thurman testified that he resided at 1950 North Hallock in Kansas City; that on the night of December 2d and between midnight and 1:00 on the morning of December 3, 1981, he had been at that address.

"Q. Okay. And was anyone with you from midnight December 3rd, until about one o'clock, anybody else with you at that time?
"A. Yes, there was.
"Q. And who was that?
"A. Well, there was George Suttington.
"Q. Who is that?
"A. George Sutterton (phonetic).
"Q. Okay, he's called "Old Dude;" is that his name?
"A. Yes; right.

"Q. Okay.

"A. Melvin Anderson, he was there.

"Q. Melvin Anderson, they call him "Sonny?"

"A. Right.

"Q. Okay.

"A. Well, Herbert and there was a number of people there.

"Q. Was Herbert Douglas there at that time?

"A. Yes, he was.

"Q. What were you four men doing?

"A. Well, either playing dominoes or cards, you know. That's what we usually do so we—

"Q. (Interrupting) Now, Melvin Anderson, that is the gentleman in the back of the courtroom here with the vest on (indicating)?

"A. Yes, he was—

"Q. —there, too?

"A. Right.

"Q. And how late did you play cards there?

"A. Well, sometimes we play all night.

"Q. But this particular night, on Thursday, December 3rd.

"A. I would say just about all night long."

Defendant took the stand in his own behalf and testified he had first met Reuben Thurman at 1950 North Hallock and:

"Q. Okay. And why did you happen to go down to 1950 North Hallock?

"A. I was a friend of George Suttington.

"Q. I'm sorry?

"A. I was a friend of George Suttington.

"Q. I can't understand you.

"A. I said I was a friend of George Suttington. I went by to visit.

"Q. Oh, Suttington?

"A. Yes.

"Q. And you called him what name?

"A. 'Old Dude.'

"Q. Okay, did you know his real name when you were arrested?

"A. No.

"Q. What did you just know him by?

"A. 'Old Dude.'

"Q. Okay. And Melvin—

"A. Anderson.

"Q. Anderson, you just knew him by sight; didn't you?

"A. I learned—learned his name night before last, his real name.

"Q. Just learned his real name night before last?

"A. Yes. I know him as 'Sonny.' ''

The witness Thurman and defendant testified on February 24. When court reconvened on February 25, it was noted the two alibi witnesses still had not made their appearances and defense counsel again asked to call Melvin Anderson. This request was

denied by the court and defendant's case was therefore completed.

In denying defendant's request to endorse and call Melvin "Sonny" Anderson as an additional alibi witness, the trial judge seems to have relied entirely upon the pretrial conference order wherein it stated that "Defense counsel will give the State the names of his witnesses 7 days before trial," and the provisions of K.S.A. 22-3218, which the trial court interpreted as absolutely requiring the defendant to provide the prosecuting attorney with the names of his alibi witnesses at least seven days before the commencement of the trial. That statute requires defendant to have given notice of his intention to rely on an alibi and to have stated where he was at the time of the crime, and to have endorsed on the notice given to the prosecuting attorney the names of witnesses he proposed to use in support of such contention. It also provides:

"(2) *On due application, and for good cause shown, the court may permit defendant to endorse additional names of witnesses on such notice, using the discretion with respect thereto applicable to allowing the prosecuting attorney to endorse names of additional witnesses on an information.* The notice shall be served on the prosecuting attorney at least seven days before the commencement of the trial, and a copy thereof, with proof of such service, filed with the clerk of the court. *For good cause shown the court may permit notice at a later date.*"

It is clear that on December 30, 1981, by means of the pretrial conference, the State was notified of defendant's intent to rely on alibi. At that time, the names of three witnesses, including that of Reuben Thurman, were provided. It is also clear the name of Melvin "Sonny" Anderson was not so provided. A somewhat similar situation was considered in *State v. Bright*, 229 Kan. 185, 191-92, 623 P.2d 917 (1981), wherein we find:

"This brings us to the critical issue: Did the trial court commit *reversible* error in refusing to permit the defendant to call the four witnesses for the purpose of further establishing his gullibility? If the shoe were on the other foot, as it usually is, and if it were the prosecution which had failed to disclose and endorse witnesses, and if the trial court had refused to permit the State to endorse and call witnesses, we would have much case law to guide us. The prosecution in this state has historically been required to endorse the names of its witnesses upon the information, so that the accused is made aware of the State's potential witnesses long prior to trial. [Citations omitted.] We have held many times that the matter of late endorsement of witnesses by the State is a matter within the sound discretion of the trial court; the test is whether the defendant's rights have been prejudiced. [Citation omitted.] The trial court's discretion, however, has

usually been exercised by granting the State permission to make late endorsement of witnesses. We have examined the many cases decided throughout the years under the statutes mentioned, and find it rare indeed that a trial court has denied the State's motion to endorse witnesses even up to and during trial. [Citation omitted.] We have generally approved the late endorsement unless the defendant was surprised and the testimony was critical. [Citation omitted.]

"There is no reciprocal statutory requirement that defendant disclose the names of defense witnesses prior to trial; alibi witnesses are the only exception; those must be disclosed. [Citation omitted.] However, where the State goes further than it is required to go with respect to pretrial discovery and opens its entire file to the defense, the parties frequently agree that defense witnesses will be disclosed to the State prior to trial. When such an agreement is made of record, it should be enforced. The trial court, of course, has authority to modify pretrial orders to prevent manifest injustice. [Citations omitted.] The court should employ the same standard in determining whether to permit the defendant to call undisclosed witnesses, or those whose disclosure was untimely, as it employs when determining whether to allow the State to endorse witnesses out of time: It should exercise its sound discretion."

### The court also stated:

"We do, however, wish to lay down rules for future guidance of the trial courts, should similar problems again arise. If a defendant has been required by pretrial or discovery order to disclose defense witnesses prior to trial and fails to do so, and attempts to call a witness or witnesses not disclosed, then in ruling on prosecution objections the trial court should:

"(1) Inquire why the witness or witnesses were not disclosed;

"(2) determine when the witness first became known to defense counsel, and whether the nondisclosure was willful or inadvertent;

"(3) determine whether the proposed testimony is trivial or substantial, whether it goes to an important or minor issue;

"(4) determine the extent of prejudice to the State, and the importance of the witness to the defense;

"(5) determine any other relevant facts;

"(6) grant the State a recess if prejudice can be avoided or reduced by such action; and

"(7) avoid imposing the severe sanction of prohibiting the calling of the witness if at all possible. This should be viewed as a last resort." 229 Kan. at 194.

In rendering its opinion, the court quoted with approval from *Smith v. State*, 353 So. 2d 205, 207 (Fla. Dist. Ct. App. 1977), as follows:

" '[T]his discretion [to exclude witnesses] may be exercised only after the court has made an adequate inquiry into all of the surrounding circumstances, and failure of the trial court to inquire into these circumstances constitutes error. . . . The inquiry should at least cover whether the violation was inadvertent or willful, whether it was trivial or substantial, the extent of prejudice to the state, and the feasibility of rectifying any prejudice by some means short of

excluding the witness. . . . The importance of the omitted witnesses should also . . . be taken into consideration.' " 229 Kan. at 193.

Contrary to the position apparently taken by the trial court, the provisions of K.S.A. 22-3218 and our case law make it clear that whether to allow either the State or a defendant to endorse witnesses out of time, even an alibi witness, is a matter to be determined through the exercise of sound discretion by the trial court. Discretion to exclude a proposed witness may be exercised only after the court has made inquiry and given consideration to the rules for guidance laid down by our Supreme Court. This is particularly true where, as here, notice of alibi was previously given.

In the matter before us, there does not appear to have been any inquiry as to why the name of Melvin "Sonny" Anderson had not been disclosed or as to when the witness first became known to defense counsel, although there was some effort by defense counsel to explain both these items. The State suggests Melvin "Sonny" Anderson would only reiterate what alibi witness Reuben Thurman was saying and thus, "be cumulative in nature." We believe that where the defense of alibi is before the court, the testimony of all witnesses who might be able to substantiate the alibi would be most important and certainly not trivial. There does not appear to have been any attempt to determine prejudice either to the State or to defendant by reason of excluding the witness. In short, we conclude from this record the trial court did not exercise "the discretion with respect thereto applicable to allowing the prosecuting attorney to endorse names of additional witnesses on an information." Defense counsel was denied the opportunity to make a proffer of the testimony of Melvin "Sonny" Anderson so we are unaware of what he might have said. However, if his testimony would have been to the effect that defendant was at some other place at the time of the crime charged, the severe sanction of prohibiting the calling of that witness would constitute manifest injustice. We deem this reversible error.

Having so decided, other issues on appeal need not be addressed.

Reversed and remanded for new trial.