No. 75,594

STATE OF KANSAS, *Appellee*, v. KENO CLAIBORNE, *Appellant.*

(940 P.2d 27)

Opinion filed May 30, 1997.

*Mary Curtis*, assistant appellate defender, argued the cause, and *Wendy L. Rhyne Slaton*, special appellate defender, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant.

*Gwynne E. Harris*, assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Keno Claiborne appeals his convictions and sentence for felony murder, aggravated robbery, aggravated battery, and aggravated assault. He claims that he should have been tried as a

juvenile offender. He also contends that the court abused its discretion by denying him the opportunity to call an alibi witness. Finally, he contends that the evidence is insufficient to establish aggravated robbery. We affirm.

At the time the defendant was charged with felony murder, aggravated robbery, aggravated battery, and aggravated assault, he was 16 years old. Upon motion by the State and after a full hearing, the defendant was certified to stand trial as an adult.

Early one Sunday morning in mid-August, the defendant and another assailant, Michael Yates, attacked Michael Wheat, Christopher Humphrey, and Sheena Hoyer in order to steal Wheat's car. Wheat was shot in the leg by Yates as he attempted to exit the driver's seat. On the other side of the car, the defendant pointed a gun at Hoyer and ordered her out of the way. He then ordered Humphrey out of the car. A struggle ensued during which Humphrey received a fatal gunshot wound to the head. The defendant escaped on foot, and Yates drove the car away. The victims were unable to identify the assailants because they had covered their faces.

Yates testified that he and the defendant were traveling to visit their friend, LaTonya Ward, when they saw Wheat's car and decided to take it. Ward lived next door to Shannon Hoyer, the older sister of victim Sheena Hoyer. The car was parked in front of Shannon Hoyer's house at the time. Yates testified that it was his idea to steal the car. He stated that they entered Ward's house, that they talked with her, that he removed his jewelry, and that both he and the defendant covered their faces. They hid in the bushes across the street from the car.

Yates testified that after 20-30 minutes, Wheat, Humphrey, Sheena Hoyer, and her twin sister, Sara, came out of Shannon Hoyer's house and walked to the car. After Sara returned to the house, Yates and the defendant jumped out of the bushes and confronted the others. Yates explained that he shot Wheat in the leg, pulled him out of the car, and drove the car away. He heard another gunshot behind him. He met the defendant at a prearranged place, drove the car to a field, and together they removed the wheels. He testified that the defendant shot Humphrey. Yates

also stated that he was testifying against the defendant pursuant to a deal he made with the district attorney's office to get the lesser charge of aggravated battery.

Ward testified that prior to Yates leaving her home, he told her "they were about to go jack some nigger for their car." She went to bed but got up when she heard voices outside. She assumed nothing was wrong because she saw several people were talking together. After she returned to bed, she heard gunshots. When she looked out the second time, she saw Sheena with Humphrey, who was lying on the ground. She also saw the car drive off, and she saw someone run between the buildings. The person running away had a white t-shirt wrapped around his head. She exited and attempted to assist Wheat with his wounded leg.

Wheat testified at the defendant's trial and confirmed the events of the evening. In addition, Sheena and Sara testified to the same events. No one was able to provide a description of the assailants because of their covered faces other than that they were both black males.

The following day, the defendant and Yates arrived at Ward's home and told her to keep quiet about the events of the night before. Nevertheless, she called Crime Stoppers and anonymously reported what she knew. Eventually, she gave a statement to the police.

Two of the police detectives who investigated the homicide testified at trial. Detective Thomas Young spoke of his interview with Yates 2 days following the murder. The interview was conducted at the Topeka police station and was videotaped. During the interview, Yates denied all charges. Despite Yates' contentions, Detective Young removed Yates from the room and proceeded to prepare an arrest report. Young testified that Yates then told him he wanted to talk. Yates confessed to the carjacking, claimed that he shot Wheat by accident, and claimed that he only drove the car around the corner. Since the video room was being used, Young was not able to videotape the confession. Yates insisted he did not kill Humphrey, and he told Detective Young that the defendant was responsible.

Sergeant Detective Randy Mills testified that the police conducted two interviews with the defendant. In the first interview, the defendant denied his involvement and suggested gang members of the Four Corner Hustlers were responsible. He stated that at the time of murder he was talking with relatives in front of the home of his cousin, Calinda Johnson-Burnett. Following this interview, Mills assigned various officers to verify the defendant's alibi. During the second interview, the police confronted the defendant with the fact that they could not confirm his alibi. The defendant continued to maintain he had not commited the crime. At the close of the interview, Mills completed the paperwork for the defendant's arrest.

At trial, the State called Calinda Johnson-Burnett, her husband, Casey Burnett, and the defendant's aunt, Belinda Wiseman. The defendant gave the names of each of these people to the police when he explained where he was on the morning of the murder. Each testified that they did not remember seeing the defendant that morning. Finally, the State called Jared Self. This young man testified that 2 days before the murder, he was at a gathering with both the defendant and the victim. According to Self, the defendant proclaimed that he wanted the "rims" on Wheat's car. Humphrey responded: "Not while I'm alive." The defendant responded: "Shit happens." Self gave this information to the police a week after Humphrey was killed.

The defendant did not testify at trial. He called one witness, Victoria Johnson, another cousin, to testify to his presence on the night of the murder. The State objected on the grounds that it had not received notice of the alibi witness, and the district court dismissed the witness.

## Certification As An Adult

Recently, in *State v. Tran*, 252 Kan. 494, 847 P.2d 680 (1993), we said:

"Any time a court in Kansas is asked to determine whether the prosecution of a juvenile as an adult is warranted it must consider the statutory factors that appear in K.S.A. 1992 Supp. 38-1636(e). Additionally, K.S.A. 1992 Supp. 38-1636(f)(2) requires the court to find, among other things, that there 'is substantial evidence

that the respondent should be prosecuted as an adult for the offense with which the respondent is charged.' " 252 Kan. at 508.

The standard we apply on appeal is also set forth in *Tran.* "The standard for evaluating whether the decision to certify a juvenile as an adult was proper is whether the decision is supported by substantial evidence." 252 Kan. at 508. Finally, the insufficiency of the evidence pertaining to one or more factors listed in K.S.A. 38-1636(e) is not determinative. *State v. McIntyre*, 259 Kan. 488, Syl. ¶ 5, 912 P.2d 156 (1996).

The defendant contends that the district court based its decision solely upon evidence that the defendant's prognosis within the juvenile system was poor, to the exclusion of other statutory factors. The record does not support this contention. The court concluded:

"In reviewing the eight factors for consideration, and the Court notes specifically the statute reflects that the insufficiency of evidence pertaining to any one or more of the factors listed in this subsection should not, in and of itself, be determinative of the issue. The Court has those eight factors for consideration, and, certainly, in looking at the eight factors before the Court here today, the Court must look towards the history and the chronicity of the actions of this respondent. The Court must look towards the severity of the allegations before the Court, and recognize and understand that they are simply allegations. The Court must look towards the prior adjudications, which are misdemeanor adjudications, although they may have, in some instances, been filed as a higher level of complaint. The Court looks toward the adjudicated factor, not what the original filing was; but, probably the most controlling issue for the Court's consideration as far as this case is concerned is subsection (7), which deals with the availability of programs within the system to meet the needs of the respondent and that are likely to rehabilitate the respondent prior to the expiration of the Court's jurisdiction. As counsel are well aware, this Court's jurisdiction ends at the age of twenty-one without regard to what the status of the Respondent may or may not be at that point in time. Once they reach the age of twenty-one, they are discharged from the Court's jurisdiction, and the Court has no ability to extend or modify that factor.

"The testimony of Dr. Logan is, his expert recommendation or testimony was, to waive the young man into the adult system, to let him stand or fail, if you will, as to his innocence, which he proclaims in the adult system through a trial by jury of his peers, to determine whether or not he is culpable for the acts alleged. Doctor Herrman, who is the program director for the Youth Center at Topeka, indicated that, despite the programming that is available, and despite the fact that there is now programming available that was not previously available to this young man, that his prognosis was poor as to the success of rehabilitation of this young

person within the confines of the juvenile system. Miss Teller testified that, in her experience as a Court Services officer, there are no other programs within the juvenile system that are likely to afford rehabilitation; that there was consideration of Job Corps, there was consideration of St. John's Military School, there was consideration of other group-home facilities, none of which were deemed appropriate or willing to accept the respondent due to the history and chronicity of his problems."

"The Court finds, in this case, that despite my belief in the system and despite my desire to afford every opportunity to young people to benefit from the juvenile system, it is my finding that, in this instance, the Court should and will waive his young man into the adult system to face the charges that the district attorney wishes to levy."

We conclude that there is substantial evidence supporting the trial court's certification.

## Alibi Witness

The defendant called Victoria Johnson to testify that at the time of the incident, she saw him at a party given by Calinda Johnson-Burnett. There is no dispute that the evidence was to be an alibi for the defendant. The State objected on the grounds that defense counsel had failed to file a notice of an alibi witness pursuant to K.S.A. 22-3218, which provides:

"(1) In the trial of any criminal action where the complaint, indictment or information charges specifically the time and place of the crime alleged to have been committed, and the nature of the crime is such as necessitated the personal presence of the one who committed the crime, and the defendant proposes to offer evidence to the effect that he was at some other place at the time of the crime charged, he shall give notice in writing of that fact to the prosecuting attorney except that no such notice shall be required to allow testimony as to alibi, by the defendant himself, in his own defense. The notice shall state where defendant contends he was at the time of the crime, and shall have endorsed thereon the names of witnesses he proposes to use in support of such contention.

"(2) On due application, and for good cause shown, the court may permit defendant to endorse additional names of witnesses on such notice, using the discretion with respect thereto applicable to allowing the prosecuting attorney to endorse names of additional witnesses on an information. The notice shall be served on the prosecuting attorney at least seven days before the commencement of the trial, and a copy thereof, with proof of such service, filed with the clerk of the court. For good cause shown the court may permit notice at a later date.

"Within seven days after receipt of the names of defendant's proposed alibi witnesses, or within such other time as is ordered by the court, the prosecuting

attorney shall file and serve upon the defendant or his counsel the names of the witnesses known to the prosecuting attorney which the state proposes to offer in rebuttal to discredit the defendant's alibi at the trial of the case. Both the defendant and the prosecuting attorney shall be under a continuing duty to disclose promptly the names of additional witnesses which come to the attention of either party subsequent to filing their respective witness lists as provided by this section so that reciprocal discovery rights are afforded both parties.

"(3) In the event the time and place of the crime are not specifically stated in the complaint, indictment or information, on application of defendant that the time and place be definitely stated in order to enable him to offer evidence in support of a contention that he was not present, and upon due notice thereof, the court shall direct the prosecuting attorney either to amend the complaint or information by stating the time and place of the crime, or to file a bill of particulars to the indictment or information stating the time and place of the crime; and thereafter defendant shall give the notice above provided if he proposes to offer evidence to the effect that he was at some other place at the time of the crime charged.

"(4) Unless the defendant gives the notice as above provided he shall not be permitted to offer evidence to the effect that he was at some other place at the time of the crime charged. In the event the time or place of the crime has not been specifically stated in the complaint, indictment or information, and the court directs it be amended, or a bill of particulars filed, as above provided, and the prosecuting attorney advises the court that he cannot safely do so on the facts as he has been informed concerning them; or if in the progress of the trial the evidence discloses a time or place of the crime other than alleged, but within the period of the statute of limitations applicable to the crime and within the territorial jurisdiction of the court, the action shall not abate or be discontinued for either of those reasons, but defendant may, without having given the notice above mentioned, offer evidence tending to show he was at some other place at the time of the crime."

The defense counsel agreed that a formal notice of alibi was never filed with the court. However, he argued that the State did not suffer any surprise by his calling Victoria Johnson to testify. Counsel stated that she was one of several people the defendant told the police he had talked with on the night of the crime and, thus, the State was aware of her. In addition, counsel noted that the State had called each of those people to the stand except Victoria Johnson.

In responding to the State's objection, the trial court determined that what the State may or may not have known would not circum-

vent the notice requirements of the alibi statute. The trial court stated:

"THE COURT: The statute doesn't say you don't have to give notice if they know all the witnesses that you are going to call, just bring it on them. That doesn't cut it.

"All right. I'm going to sustain the objection. I think that to call a witness that you've not—or when you've not stated the alibi defense, to call a witness that you're going to try to put Keno in some other place at the time that all of the evidence points to the crime occurring is contrary to the alibi statute."

The exclusion of alibi testimony because of noncompliance with the notice requirements of K.S.A. 22-3218 is within the trial court's discretion. *State v. Roberts*, 226 Kan. 740, 602 P.2d 1355 (1979); *State v. Kirk*, 208 Kan. 645, 493 P.2d 233 (1972). The defendant contends that the exclusion deprived him of his right to present a defense and therefore denied him a fair trial. However, we have further held the notice of alibi statute does not deprive the accused of the defense of alibi but simply makes notice of the defense a prerequisite. *State v. Rider*, 194 Kan. 398, 401, 399 P.2d 564 (1965). As pointed out in *Williams v. Florida*, 399 U.S. 78, 81, 26 L. Ed. 2d 446, 90 S. Ct. 1893 (1970): "Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." See *Roberts*, 226 Kan. at 743.

The defendant relies upon those factors a trial court must consider when deciding whether to allow a party to call a witness that was not endorsed to testify at trial. Those factors were set forth in *State v. Bright*, 229 Kan. 185, 623 P.2d 917 (1981), and provide solid guidelines for the trial court in determining whether to allow a party in a criminal prosecution to call a witness or witnesses not disclosed but required to be disclosed prior to trial. The trial court should:

"(1) [i]nquire why the witness or witnesses were not disclosed;
(2) determine when the witness first became known to defense counsel, and whether the nondisclosure was willful or inadvertent;
(3) determine whether the proposed testimony is trivial or substantial, whether it goes to an important or minor issue;
(4) determine the extent of prejudice to the State, and the importance of the witness to the defense;

(5)  determine any other relevant facts;

(6)  grant the State a recess if prejudice can be avoided or reduced by such action; and

(7)  avoid imposing the severe sanction of prohibiting the calling of the witness if at all possible. This should be viewed as a last resort." *Bright*, 229 Kan. at 194.

The defendant, relying upon *State v. Douglas*, 234 Kan. 605, 675 P.2d 358 (1984), contends that the failure of the trial court to consider the above factors amounts to an abuse of discretion. In *Douglas*, the defendant gave the required alibi notice that he intended to rely upon alibi some 50 days prior to trial and listed three witnesses. Long before the State rested its case, the defendant was aware that Melvin Anderson, not disclosed to the State, was a potential alibi witness. Three days into trial, after the State rested, the defendant sought to endorse Melvin Anderson. We affirmed the trial court's exclusion of the alibi witness but said:

"The alibi statute requires a trial judge deciding whether to allow late endorsement of an alibi witness to exercise the same discretion he must exercise when deciding whether to allow late endorsement of a prosecution witness on the information. This is the same discretion that the trial court must exercise when the defense has agreed but has failed to disclose defense witnesses prior to trial and then seeks to endorse additional witnesses. As a result, the rationale of [*State v. Bright*, 229 Kan. 185, 623 P.2d 917 (1981),] applies when the endorsement of additional alibi witnesses is sought." 234 Kan. at 607-08.

It must be noted that *Douglas* involved the endorsement of additional alibi witnesses after adequate notice under K.S.A. 22-3218 had been given. In this case, no notice had been given by the defendant even though the defendant knew or should have known long before the trial about Victoria Johnson. Given our standard of review and the clear directions contained in K.S.A. 22-3218, we conclude that the trial court did not abuse its discretion in excluding the defendant's alibi witness.

## Sufficiency of Evidence

The defendant alleges that there is no evidence to support a conviction of aggravated robbery predicated on a taking by threat of bodily harm. K.S.A. 21-3427 defines this crime: "Aggravated robbery is a robbery, as defined in K.S.A. 21-3426 and amend-

ments thereto, committed by a person who is armed with a dangerous weapon or who inflicts bodily harm upon any person in the course of such robbery." K.S.A. 21-3426 provides: "Robbery is the taking of property from the person or presence of another *by force or by threat of bodily harm* to any person." (Emphasis added.) "Threat" has been defined by the Kansas Legislature. K.S.A. 21-3110(24) provides: " 'Threat' means a communicated intent to inflict physical or other harm on any person or on property."

"When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Knighten*, 260 Kan. 47, Syl. ¶ 1, 917 P.2d 1324 (1996).

In addition, "[t]he appellate court looks only to the evidence in favor of the verdict to determine if the essential elements of a charge are sustained." *State v. Pratt*, 255 Kan. 767, 768, 876 P.2d 1390 (1994).

The facts set forth above establish that the defendant wrapped a white t-shirt over his face, hid in the bushes with a weapon, and jumped out and, with Yates, took Wheat's automobile. Thereafter, both met and removed the rims that had motivated the robbery in the first place. While the driver of the vehicle was shot in the leg, the prosecution chose to proceed upon the theory that the defendant, with Yates, obtained the vehicle by threat of force. We are convinced based upon the evidence of record that a rational factfinder could have concluded beyond a reasonable doubt that the taking of the vehicle was effected through a threat, even though there was also evidence that it was effected by shooting Wheat in the leg.

Affirmed.