NOT DESIGNATED FOR PUBLICATION

No. 119,753

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON BRYANT ANDERS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Kingman District Court; FRANCIS E. MEISENHEIMER, judge. Opinion filed October 25, 2019. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Rachel L. Pickering*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., LEBEN, J., and BURGESS, S.J.

PER CURIAM: Jason Bryant Anders appeals his jury convictions for burglary, felony theft, and criminal deprivation of property in Kingman County. On appeal, Anders contends that the district court abused its discretion when it denied his out-of-time request to endorse an alibi witness to testify at trial. He also contends that the district court erred in failing to provide a lesser-included offense instruction to the jury for misdemeanor theft. For the reasons set forth in this opinion, we find no error. Thus, we affirm Anders' convictions.

FACTS

On the morning of June 27, 2016, Dale Thieme arrived at his place of employment—commonly known as the Zenda Co-op—and found that two of the bay doors had been opened during the night. Thieme also discovered that a pickup truck and various other items belonging to the Co-op were missing. Thieme reported the crime to the Kingman County Sheriff's Department, and the dispatcher sent Sergeant David Hillman to the Co-op around 6 a.m.

As Sergeant Hillman drove to the scene, the dispatcher informed him that one of the items taken from the Co-op had possibly been found on K-42 Highway just east of Zenda. Sergeant Hillman went to that location and found a new tire laying in the highway. The new tire appeared to Sergeant Hillman to be of the same type and brand as the tires sold at the Co-op.

After arriving at the Co-op, Sergeant Hillman spoke with Thieme and Randy Packard, the manager of the Co-op. Packard reported that tires, tools, and a pickup truck were missing. Also, Thieme showed Sergeant Hillman a piece of plexiglass lying on the ground outside the Co-op's bay doors with a boot print. Sergeant Hillman photographed the boot print and sent the plexiglass to the Kansas Bureau of Investigation (KBI) laboratory for testing.

After doing an inventory, Packard faxed Sergeant Hillman a list of the specific items he found to be missing from the Co-op. Packard also estimated the value of the various missing items. He valued the missing tires at $3,296.30, the missing tools at $640, and the missing pickup truck at $15,000. Packard would later testify at trial that he determined the value of the missing items after reviewing the Co-op's inventory and the receipts for the items when they were purchased.

2

Later that day, the missing pickup—a white Ford F-150 extended cab—had been found north of Zenda on 110th Street. Sergeant Hillman went to the location where the pickup truck was found. As he approached the pickup truck, Sergeant Hillman noticed an impression of a boot print in the sand near the driver's door. Believing the boot print to be similar to the one left on the piece of plexiglass outside the Co-op, he photographed the boot print as evidence.

When Packard arrived to take possession of the pickup truck, he told Sergeant Hillman that he received information that an unidentified white male had come to the Co-op the previous day asking for water. According to Packard, the man had been described as bald, wearing jeans and boots, and not wearing a shirt.

As he was heading into Zenda, Lyndon Messenger had noticed a shirtless man walking on the north side of the highway east of town who might need help. Noticing a sheriff's car at the Co-op, Messenger stopped to tell Sergeant Hillman about the shirtless man. Packard asked Messenger to look at security video depicting the break-in the previous night. When he did so, Messenger indicated that one of men in the video looked like the shirtless man he passed on the highway.

Later, Sergeant Hillman spotted a man matching the description provided by Messenger near the railroad tracks two miles east of Zenda near K-42 highway. As he approached, Sergeant Hillman saw the man look back at him and then enter the bushes along the south side of the railroad tracks. A K-9 officer was called to the scene, and Anders was found hiding underneath the bushes.

After taking Anders into custody, Sergeant Hillman collected the boots that he had been wearing. Comparing impressions of the boots to the boot print found on the plexiglass, Sergeant Hillman believed that "they appeared to be the same." So, Sergeant Hillman also provided the boots to the KBI laboratory for testing.

3

The State charged Anders with burglary of the Co-op, felony theft of the tires and tools, and criminal deprivation of the pickup truck. While Anders was awaiting trial, he shared a jail cell with Zakary Hall. In July, Hall informed law enforcement that Anders had told him that he robbed the Zenda Co-op—taking some tires and a pickup truck—and that he had hid the tires in a hedgerow of trees. According to Hall, Anders told him that after hiding the tires, he drove the pickup truck until it ran out of gas. After receiving the information from Hall, law enforcement was able to recover some of the stolen tires.

A two-day jury trial commenced on December 5, 2016. At trial, the State showed the jury the security videotape taken from the Co-op on the night of the burglary. The videotape showed two individuals load the Co-op's pickup truck with tires. The bay doors were opened so that tires could be loaded into a second pickup truck waiting outside. One of the individuals depicted on the videotape met the general description of Anders.

Jacqueline Hayworth, a KBI forensic scientist and latent print supervisor, testified that she compared the boot print on the plexiglass with Anders' boots. Based on her analysis, she rendered the opinion that the boot print on the plexiglass had the characteristics, design, physical shape, and some physical signs consistent with Anders' left boot. Hayworth opined that the impression photographed by Sergeant Hillman in the sand near the Co-op's pickup truck also had characteristics similar to Anders' right boot. However, Hayworth indicated that she could not be 100% percent sure that the impressions were made by the boots that Anders was wearing at the time of his arrest.

Packard testified that from his review of his inventory and the videotape of the items being taken, he determined the total value of the tires to be $3,296.20 and the value of the tools—which were never recovered—to be $640. He also testified that although only one pickup load of tires had been recovered, the security footage showed two pickup loads of tires had been taken from the Co-op. As such, he based his estimate of value on all of the tires that were stolen.

4

After the State rested and the district court denied a motion for judgment of acquittal, Anders moved to endorse an alibi witness. Defense counsel admitted that Anders had known of the alibi witness prior to trial but did not want to call her because the witness was a girlfriend "who had a very wealthy family, very high up in society in El Dorado, and bringing her before the Court to testify that she was with [Anders] and what they were doing would be very damaging to her and he chose not to bring her." Defense counsel indicated that the witness would purportedly testify that she was with Anders on June 26, 2016, into the next morning until approximately 5 a.m.

The district court recessed the proceedings to allow the State to attempt to interview the proposed alibi witness before making its ruling. After speaking to the potential witness, the State objected to the late notice and argued that the information would not be "as probative as . . . initially suggested . . . ." Defense counsel confirmed that Anders chose not to give him the alibi information until that morning.

After considering the arguments presented by counsel, the district court noted that it had reviewed several cases regarding the issue of late notice. It then found that Anders had failed to show good cause to allow the belated endorsement of the potential alibi witness. In support of its finding, the district court noted that the existence of the potential alibi witness had been known to Anders "for a significant period of time," but he voluntarily chose not to share the information with his attorney. Accordingly, the district court denied Anders' motion for being filed out-of-time.

Anders did not present any witnesses in his defense, and the district court instructed the jury. After closing arguments by counsel, the case was submitted to the jury for deliberation. Ultimately, the jury convicted Anders of all three counts. Based on Anders' criminal history score of A, the district court imposed a controlling sentence of 34 months in prison. Thereafter, Anders filed a timely notice of appeal.

5

ANALYSIS

*Late Notice of Alibi Defense*

On appeal, Anders argues that the district court abused its discretion when it denied his belated request to allow an alibi witness to testify. In response, the State contends the district court did not abuse its discretion in denying the motion to present an alibi witness because Anders failed to comply with the statutory notice requirements set forth in K.S.A. 22-3218. Generally, we review the exclusion of alibi testimony because of noncompliance with the statutory notice requirements under an abuse of discretion standard. *State v. Claiborne*, 262 Kan. 416, 423, 940 P.2d 27 (1997). To the extent that we are required to interpret statutory language, our review is unlimited. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

Under K.S.A. 22-3218(1), when a defendant seeks to call an alibi witness "to offer evidence to the effect that he was at some other place at the time of the crime charged, he [or she] shall give notice in writing of that fact to the prosecuting attorney." The written notice must state where the defendant claims he or she was at the time of the crime and identify the names of the witnesses to be called in support of the alibi. K.S.A. 22-3218(2) requires that the written notice "shall be served on the prosecuting attorney at least seven days before the commencement of the trial." However, a district court may permit notice at a later date "[f]or good cause shown." K.S.A. 22-3218(2).

Here, it is undisputed that Anders failed to comply with the seven-day advance written notice requirement. In fact, he waited until trial to tell his attorney about the proposed alibi witness, and it was not brought to the district court's attention until after the State had rested on the second day of trial. Nevertheless, Anders argues that the district court abused his fundamental right to present his defense by denying his belated motion.

6

In arguing to the district court in support of the belated motion to add an alibi witness, defense counsel stated:

"I thought the person was no longer in his life, and due to family reasons he was not willing to allow her to be contacted by me or be brought before the Court. I didn't even know her name. I just knew that this was a girlfriend at the time who had a very wealthy family, very high up in society in El Dorado, and bringing her before the Court to testify that she was with [Anders] and what they were doing would be very damaging to her and he chose not to bring her."

After reviewing the law and confirming that Anders had voluntarily chosen prior to trial not to pursue an alibi defense, the district court ruled that Anders had not shown good cause for permitting the late endorsement of an alibi witness. Although reasonable minds could disagree, we find this ruling to be reasonable under the circumstances and within the district court's discretion.

Anders attempts to frame the issue as one depriving him of his fundamental constitutional right to present a complete defense, an issue this court reviews de novo. See *State v. Suter*, 296 Kan. 137, 144, 290 P.3d 620 (2012). However, the Kansas Supreme Court has rejected the argument that K.S.A. 22-3218(2) deprives the defendant of a fundamental right. In *Claiborne*, our Supreme Court explained that

"the notice of alibi statute does not deprive the accused of the defense of alibi but simply makes notice of the defense a prerequisite. As pointed out in *Williams v. Florida*, 399 U.S. 78, 81, [90 S. Ct. 1893, 26 L. Ed. 2d 446] (1970):  'Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate.' [Citations omitted.]" *Claiborne*, 262 Kan. at 423.

We agree that the statutory requirement of written notice seven days prior to trial is an important prerequisite—not only to protect the State's interest but also to protect the integrity of the judicial process. Notwithstanding Anders' suggestion that the denial of his

7

belated motion to add an alibi witness violated his right to a fair trial, we note that the right to present a defense is not unlimited and is subject to the statutory rules of evidence as well as caselaw interpreting those rules. *State v. Baker*, 281 Kan. 997, 1008, 135 P.3d 1098 (2006). As the United States Supreme Court has recognized, a defendant's right to call and examine witnesses is not absolute and will occasionally be overridden by "other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973); see *State v. Green*, 254 Kan. 669, 675, 867 P.2d 366 (1994).

Although our Supreme Court identified the type of factors to be considered by a district court when considering a belated attempt to endorse an additional alibi witness in *State v. Bright*, 229 Kan. 185, 194, 623 P.2d 917 (1981), these factors do not apply when a defendant has failed to provide any notice of an alibi witness prior to trial. See *Claiborne*, 262 Kan. at 423-24 (*Bright* factors not applied when no statutory notice of alibi had been given prior to trial); *State v. Gibson*, 30 Kan. App. 2d 937, 951-52, 52 P.3d 339 (2002) (factors enumerated in *Bright* apply only when a party seeks the endorsement of an additional alibi witness, not when there has been no statutory notice of alibi given prior to trial).

In *State v. Pham*, 27 Kan. App. 2d 996, 1006-07, 10 P.3d 780 (2000), a panel of our court held that a defendant who knew of potential alibi witnesses prior to the statutory seven-day notice deadline had not demonstrated good cause when he waited until the day before trial to attempt to assert an alibi defense. Even though Anders acknowledges this court's holding in *Pham*, he argues that the statute does not provide that good cause can never be shown when a defendant knows of alibi witnesses. We agree that there may be instances in which a defendant may be able to demonstrate good cause even when he or she knew of a potential alibi witness prior to the statutory notice period, but we do not find this to be such a case.

8

Anders cites *State v. Aldaba*, 29 Kan. App. 2d 184, 194, 25 P.3d 149 (2001), in which another panel of our court found that disallowing alibi testimony for noncompliance with the notice requirements of K.S.A. 22-3218 should be used only "'as a last resort.' [*Bright*,] 229 Kan. at 194." Regardless of the validity of this statement, the facts in *Aldaba* do not support Anders' position in the present case. In that case, the district court allowed the State to present a rebuttal alibi witness' testimony even though the State had not complied with the notice requirements of K.S.A. 22-3218. The *Aldaba* panel concluded that the district court abused its discretion in permitting the late endorsement. It found it to be significant that the State had known of the potential rebuttal witness two days to a week before trial, but took no action to notify the defendant before reaching the courtroom.

Likewise, the *Aldaba* panel noted that the prosecutor had previously represented to the district court that she did not plan to call any witnesses that had not been disclosed. The panel found the testimony provided by the rebuttal witness was not trivial, and that no effort was made to mitigate the prejudice suffered by the defendant from the late endorsement. As such, the panel concluded that the district court had abused its discretion in permitting the late endorsement of the rebuttal alibi witness. 29 Kan. App. 2d at 195.

Although a district court has the discretion to allow a party to call an alibi witness even when the required statutory notice is not given prior to trial, it is not required to do so. In fact, our Supreme Court has warned against allowing a party to intentionally delay the disclosure of the names of witnesses as part of trial strategy. See *State v. Stafford*, 213 Kan. 152, 164, 515 P.2d 769 (1973), *modified* 213 Kan. 585 (1974). Here, the statute in question—K.S.A. 22-3218—is quite explicit in requiring that written notice of an alibi witness be provided at least seven days prior to trial. As previously noted, the district court has an interest in protecting the judicial process against the late endorsement of an alibi defense due to the ease with which an alibi may be fabricated. See *Claiborne*, 262

9

Kan. at 423. Thus, K.S.A. 22-3218(2) allows the district court to permit the late endorsement of an alibi defense only "[f]or good cause shown."

In summary, Anders was required to give written notice at least seven days in advance of trial if he wanted to call an alibi witness. See K.S.A. 22-3218(2). Anders candidly admits that he knew of the potential alibi witness prior to that time but he made the conscious decision not to pursue an alibi defense prior to trial. In fact, the record reflects that he waited until after the close of the State's evidence before deciding that he had changed his mind and now wanted to pursue an alibi defense. The record also reveals that the district court carefully considered the matter and found that Anders had failed to show good cause for his delay. We are unable to conclude that the district court's action was arbitrary, fanciful, or unreasonable. Thus, we conclude that the district court did not abuse its discretion in refusing to allow Anders to proceed with his alibi defense.

*Lesser included offense instruction*

Anders also contends that the district court erred by failing to give an instruction on the lesser included offense of misdemeanor theft. When analyzing jury instruction issues, we follow a three-step process. First, we determine whether we can or should review the issue. Second, we consider the merits of the issue to determine whether the district court erred. Third, if we find that the district court erred, we assess whether the error requires reversal or is harmless. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

A lesser included crime is "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." K.S.A. 2018 Supp. 21-5109(b)(2). A district court is required to instruct on any lesser included crime when some evidence supports the crime. K.S.A. 2018 Supp. 22-3414(3); *State v. Gatlin*, 292 Kan. 372, 376, 253 P.3d 357 (2011). Here, Anders did not request the lesser included

10

offense instruction of misdemeanor theft. As such, we examine this issue to determine if there was clear error. See K.S.A. 2018 Supp. 22-3414(3). We will find clear error only if we have a firm conviction that that the jury would have reached a different verdict if the error had not occurred. The party claiming clear error—in this case Anders—has the burden to demonstrate the high degree of prejudice necessary for reversal. *McLinn*, 307 Kan. at 318.

A district court's duty to instruct on a lesser included offense arises only where there is some evidence supporting the lesser crime. If a jury could not reasonably convict a defendant of the lesser included offense based on the evidence presented, then an instruction is not required. *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012). In this case, both parties agree that misdemeanor theft is a lesser included offense of felony theft, so the requested instruction would have been legally appropriate. See *State v. Bryant*, 22 Kan. App. 2d 732, 738, 922 P.2d 118 (1996). So, we must look to whether a misdemeanor theft instruction was factually appropriate.

K.S.A. 2015 Supp. 21-5801(a)(1) defines theft as "[o]btaining or exerting unauthorized control over property" done "with intent to permanently deprive the owner of the possession, use or benefit of the owner's property." The degree of the crime of theft is established by the value of the stolen property. K.S.A. 2015 Supp. 21-5801(b); *State v. Stephens*, 263 Kan. 658, 661, 953 P.2d 1373 (1998). If the value of the property stolen is less than $1,000, the crime is a class A nonperson misdemeanor. If the value of the property stolen is at least $1,000, the crime is a felony. So, the legislative intent, as expressed through the plain language of the statute, is to provide a more severe punishment for thefts of property worth more in value. See K.S.A. 2015 Supp. 21-5801(b).

Here, the State presented evidence that the stolen items supporting the charge were worth well over $1,000. The items missing from the Co-op included tires estimated to be

11

valued at $3,296.30 as well as tools valued at $640. Packard—the Co-op's manager—testified that he had determined the value of the stolen items after reviewing his inventory and the receipts for the purchased goods. Anders did not object to this testimony and provided no evidence to counter Packard's estimate as to the value of the stolen property. We also note that the jury was given an option to find the value of the property was less than $1,000, which would have resulted in a verdict of not guilty had the jurors found that the value of the stolen property was not at least $1,000.

Anders' argument primarily goes to the credibility of the evidence presented by the State. He provides no support for his position that an instruction for the lesser included offense of misdemeanor theft was factually appropriate. Generally, a lesser included instruction is not factually appropriate where the value of the stolen goods is established to be over the felony limit and where there is no evidence of a value of less than the felony limit. See *State v. Robinson*, 4 Kan. App. 2d 428, 429, 608 P.2d 1014 (1980); *State v. Williams*, No. 114,245, 2017 WL 542876, at *5 (Kan. App. 2017) (unpublished opinion), *rev. denied* 306 Kan. 1331 (2017). Because the only evidence presented at the trial of this case supported a finding that the stolen goods were valued at $1,000 or more, we conclude that the district court did not err in failing to give the lesser included offense instruction.

Affirmed.