No. 79,846

State of Kansas, *Appellee,* v. Lance K. Stephens, *Appellant.*
(975 P.2d 801)

Opinion filed March 5, 1999.

*Aronda Strutt Kerns,* of Wichita, argued the cause and was on the brief for the appellant.

*Debra S. Peterson,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

Six, J.: The primary issue concerns the authorization of the minor defendant for trial as an adult in a felony murder case. See K.S.A. 38-1636. Lance K. Stephens appeals from his convictions and sentences for aggravated robbery, K.S.A. 21-3427, aggravated burglary, K.S.A. 21-3716, and felony murder, an off-grid felony, K.S.A. 21-3401(b). He received concurrent sentences of 46 months, 31 months, and life with the possibility of parole after 15 years, respectively.

Our jurisdiction is under K.S.A. 22-3601(b)(1) (a life sentence is imposed).

In addition to the authorization issue, we consider Stephens' claims of district court error in: (1) denying his motion to suppress statements made to police, (2) denying his motions for judgment of acquittal and new trial, (3) overruling his motion for reconsideration and request for ruling without a hearing, and (4) denying

a new trial due to cumulative error. Stephens also contends the evidence was insufficient to support his conviction.

Finding no error, we affirm.

## FACTS

The following facts are taken from Stephens' interview with a Wichita detective. In November 1993, Stephens, a 17-year-old, with Tyron Porter, a 16-year-old, planned a burglary. After unsuccessfully attempting to gain entrance to a vacant home, they decided to rob a man watching television in his mobile home. Porter approached the mobile home with the pretense of looking for someone else. The occupant, William O. Brown, II, and Porter had a short conversation. Porter and Stephens went to Porter's house to pick up a fake BB gun that resembled a semi-automatic weapon and then planned to return to the mobile home. Porter also obtained something with which to tie up Brown. As they left Porter's house, Kaleafa Straughter appeared. Porter told Straughter of the planned robbery, and Straughter decided to go along.

When the three arrived at Brown's mobile home, Straughter handed Stephens the fake gun and told him to go in and tell the man to get on the floor. Stephens did so. Brown was sitting in a chair at the time. Porter came in and began to tie up Brown. Brown struggled, backing Porter into a wall. Straughter had been rifling through a bedroom when he heard the struggle and came out to see what was happening. According to Stephens, Straughter came flying from the other end of the trailer and began hitting Brown. Brown fell to the floor. Straughter then went to the kitchen, got a knife, and returned to stab Brown. When Stephens saw blood, he dropped the gun and ran out of the trailer.

Police later found a knife near a hedge close to where Stephens and Porter lived. Fingerprint analysis revealed a print belonging to Straughter. When questioned, Straughter implicated Porter and Stephens. Police then interviewed Porter and later Stephens. Stephens' mother said he had moved to Tulsa. The police called Stephens in Tulsa and told him they wanted to question him about the murder of Brown. Stephens admitted he knew about the murder and agreed to talk to the police. A Wichita detective obtained

a warrant for Stephens' blood, hair, and tissue samples and drove to Tulsa. Two Tulsa police officers picked up Stephens from his father's house and brought him to a medical center. He gave the required samples. Stephens, after receiving *Miranda* warnings and signing a waiver of those rights, was interviewed by the detective.

Straughter was tried first and convicted of first-degree murder, aggravated robbery, and aggravated burglary. (For Straughter's version of Brown's murder, see *State v. Straughter*, 261 Kan. 481, 932 P.2d 387 [1997].)

Meanwhile, both Stephens and Porter were authorized for prosecution as adults. The cases were severed, and Stephens was tried before Porter. Defense counsel moved to suppress Stephens' statements, arguing there was no voluntary waiver of *Miranda* rights. The motion to suppress was denied.

Porter pled guilty to second-degree murder, aggravated robbery, and aggravated burglary. Porter was sentenced to concurrent terms of 103 months, 51 months, and 34 months respectively. Porter also had no prior criminal history.

## DISCUSSION

We first turn to the authorization issue. Did the district court err by authorizing the prosecution of Stephens as an adult? The answer is, "No."

We apply a substantial evidence standard in reviewing a decision to authorize a juvenile to be prosecuted as an adult. *State v. Tran*, 252 Kan. 494, Syl. ¶ 8, 847 P.2d 680 (1993). "Juvenile" means a person of 10 or more years of age, but less than 18 years. K.S.A. 1998 Supp. 38-1602(a). Stephens was 17 1/2 years old when the crimes were committed and, thus, a juvenile. A court may authorize adult prosecution where the accused is 16 or more years old if substantial evidence supports the prosecution. K.S.A. 38-1636(f)(3). In determining whether to authorize adult prosecution, a court must consider the eight factors set forth in K.S.A. 38-1636(e). *Tran*, 252 Kan. at 508. The factors as they existed when Stephens was adjudicated were:

"(1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult; (2) whether the alleged offense was

committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property, greater weight being given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a delinquent or miscreant under the Kansas juvenile code or a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution." K.S.A. 38-1636(e).

After analyzing the K.S.A. 38-1636 factors, the district court ruled there was substantial evidence to support Stephens' prosecution as an adult. Stephens disagrees. A review of the factors is appropriate. The factors, as applied to Stephens, are as follows:

(1) The seriousness of the alleged offense and whether protection of the community requires prosecution as an adult.
The district court found:

"Without question these were very serious crimes, and what is so disturbing to me is the fact that three young men together decided that they needed money and instead of going to work like most folks do they decide to get that money in a different fashion by taking it from the victim in this case."

Stephens argues his crimes were really no more serious than other "property crimes" committed by youth in the Wichita area. As the State points out, Stephens neglects to mention that there was a murder involved here.

(2) Whether the offense was committed in an aggressive, violent, premeditated, or willful manner.
The district court found, from the photographs of the crime scene, that the crimes were aggressive, violent, and willful acts. Further, the court noted Stephens admitted the robbery was premeditated. Stephens argues that the court failed to consider the

fact that Straughter was the person who killed Brown, and Straughter was an adult.

The district court was examining the nature of the crimes, without deciding guilt or innocence. The crimes were aggressive and violent. Moreover, by Stephens' own admission, the aggravated burglary and aggravated robbery were planned with Porter before Straughter entered the picture. Stephens may not have intended or foreseen the death of Brown, but he clearly planned aggressive, violent, and willful crimes.

(3) Whether the offense was against a person or against property.

Stephens does not argue with the district court's finding as to this factor:

(4) The number of alleged offenses unadjudicated and pending.

Stephens had no prior record; thus, he contends this factor favored juvenile adjudication. The district court agreed.

(5) The previous history of the respondent, including whether the respondent had been adjudicated a delinquent or miscreant.

This factor was also in Stephens' favor. He had no prior record or history of antisocial behavior. The district court agreed.

(6) The sophistication or maturity of the respondent.

The district court found there was no evidence as to this factor; thus, there was no adverse finding.

(7) Whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction.

The district court found:

"[T]he youth centers offer no more than the Department of Corrections has to offer adults in similar situations. Certainly there is hope for rehabilitation for both of the Respondents no matter where they are . . . [but] it must first come from within."

Stephens takes issue with the court's conclusions regarding juvenile programs. He contends Bruce Nystrom, Ph. D., testified that

treatment in the juvenile system was much better than in the adult system. Stephens further points out that he had no prior record and thus never had the opportunity to benefit from the juvenile system.

Dr. Nystrom offered testimony about Porter and whether Porter would benefit from juvenile programs. He did not offer an opinion about Stephens. Dr. Nystrom testified that the juvenile system was oriented more toward treatment than the adult system. The court's opinion of the services offered by juvenile programs is at odds with Dr. Nystrom's.

The district court's opinion that, due to Stephens age, there was insufficient time for the juvenile system to rehabilitate him is relevant. Stephens was already 18 by the time of the hearing. Under the law in effect at the time of Stephens' adjudication, the juvenile system lost jurisdiction on the offender's 21st birthday. See K.S.A. 38-1604(c) (The law now provides for juvenile jurisdiction until an offender reaches the age of 23. See K.S.A. 1998 Supp. 38-1604[c].). Thus, Stephens would have spent less than 3 years in the juvenile system. The district court's finding is supported by substantial evidence.

(8) Whether the interests of the respondent or of the community would be better served by criminal prosecution.

The district court said:

"There's a strong interest in this community to be able to feel safe and if nowhere else certainly in your own home. There's a strong interest in this community that juveniles should be held accountable for their actions, and when juveniles who have the necessary intellect make adult decisions they should receive adult consequences. I see both of the Respondents in this matter had a choice back in November as to what it is they wanted to do."

Stephens maintains his interests were not served by criminal prosecution. Further, he points to the absence of any prior criminal acts on his part.

The State fails to cite any evidence that supports the district court's conclusory finding here. The court stated that "when juveniles who have the necessary intellect make adult decisions they should receive adult consequences"; yet, the court previously

stated there was no evidence as to the intellect or maturity of Stephens in the record (Factor [6]). Factor (6) is designed to ascertain whether a juvenile has sophistication and maturity *beyond* that of a juvenile. See *In re J.D.J.*, 266 Kan. 211, 220-21, 967 P.2d 751 (1998). There was no evidence that Stephens had a sophistication or maturity level beyond that of a juvenile. The court failed to discuss whether Stephens' interests would be served by criminal prosecution, although reference was made to the community. There was not substantial evidence in favor of adult prosecution as to factor (8).

We find substantial evidence to establish factors (1), (2), (3), and (7) and apply them adversely to Stephens — in favor of adult prosecution. Factors (4) and (5) were established as favorable to Stephens. There was no evidence as to factor (6). There is an absence of evidence showing factor (8) was adverse to Stephens.

The district court was required to consider the eight factors set forth in K.S.A. 38-1636(e). The court was not required to make adverse findings on each of the eight factors. The insufficiency of the evidence concerning one or more factors listed in K.S.A. 38-1636(e) is not determinative. *State v. Claiborne*, 262 Kan. 416, Syl. ¶ 2, 940 P.2d 27 (1997). The legislature rejected a numerical quantification of factors when it said: "The insufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue." K.S.A. 38-1636(e). The question then is not whether a finding of four factors was enough, but whether there was substantial evidence to support the district court's conclusion that Stephens should be tried as an adult.

Today, a juvenile aged 14 or more who is charged with an off-grid offense is presumed to be an adult. K.S.A. 1998 Supp. 38-1636(a)(2). However, under the version of K.S.A. 38-1636 in effect at the time of Stephens' hearing, the State had to present substantial evidence supporting prosecution as an adult. The record as a whole reflects there was substantial evidence to show that Stephens should have been prosecuted as an adult.

### Statements to the Police

Stephens argues that his statements to the Wichita detective were rendered involuntary because a search warrant was in force

and his personal privacy was violated. He contends that, under the circumstances, he assumed he had to cooperate with the detective and the waiver of his rights was not voluntary.

Stephens moved to suppress his statements before trial. His motion was denied. During trial, the State introduced the tape-recorded confession and signed *Miranda* waiver form. There was no objection from Stephens' counsel. The State also questioned the detective about Stephens' conversation. Again, there was no objection.

When a motion to suppress is denied, the moving party must object to the evidence at trial to preserve the issue on appeal. *State v. Cellier*, 263 Kan. 54, Syl. ¶ 2, 948 P.2d 616 (1997). Here, as in *Cellier*, trial counsel not only failed to object, but also used the confessional statements in defending the case. Stephens' counsel urged the jury to listen to the tapes and believe that Stephens was not an active participant in the murder of Brown. This issue was not properly preserved for appeal.

## Sufficiency of the Evidence

Stephens contends there was insufficient evidence to support the aggravated robbery and, therefore, felony murder convictions. Specifically, Stephens argues that there was no evidence he took any property from the presence of Brown. His argument lacks merit.

A knife and VCR were taken from Brown's mobile home. The knife bore the inscription W.O.B III and was found near the apartment complex where Stephens and Porter lived. The VCR was never recovered. Stephens admitted he had planned to rob Brown. Under our standard of review, it is sufficient if there was evidence linking Stephens to the crime and there was property missing from the victim's presence. See *State v. Salcido-Corral*, 262 Kan. 392, 397-98, 940 P.2d 11 (1997); *State v. Peckham*, 255 Kan. 310, 342, 875 P.2d 257 (1994).

Stephens also suggests that he could not have foreseen the murder of Brown because he "had no idea that Kaleafa (Straughter) was going to harm Mr. Brown." This argument is also without merit. See *State v. Giddings*, 226 Kan. 110, 112, 595 P.2d 1115

(1979) (Robbery is a crime inherently dangerous to human life; thus, the foreseeability requirement of felony murder is satisfied.).

## Stephens' Post-Trial Motions

We next consider whether the district court erred by denying Stephens' motions for judgment of acquittal and new trial.

Stephens advances the same argument here he used to challenge the sufficiency of the evidence. The standard of review is the same. See *State v. Fosnight*, 235 Kan. 52, 53, 679 P.2d 174 (1984). Stephens' argument fails.

## Porter's Plea Bargain

Stephens contends the district attorney's office acted with undue partiality and prejudice by refusing to offer him a plea bargain and later offering one to Porter. Stephens was tried before Porter. Both were charged with identical crimes. Porter pled to second-degree murder and will serve about half the time that Stephens will serve. Stephens submitted a Motion for Reconsideration and Request for Ruling to the district court. The district court denied Stephens' motion.

The State reasons that we have no jurisdiction to review the district court's ruling on Stephens' motion for reconsideration because the district court had no jurisdiction. The motion to reconsider was filed 13 months after Stephens was sentenced. Under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, when a lawful sentence is imposed, a district court is without jurisdiction to reconsider a departure or modify the sentence, except to correct clerical errors. *State v. Miller*, 260 Kan. 892, Syl. ¶ 2, 926 P.2d 652 (1996); K.S.A. 21-4721(c)(1), (i). Because Stephens seeks a reduction of his sentence, the State argues he was asking for relief the district court did not have jurisdiction to give. We agree. Stephens is attempting to mount a collateral attack on his conviction and sentence.

An appellate court may not review any sentence that is within the presumptive range of sentence for the crime. K.S.A. 21-4721(c)(1). Stephens' sentences were within the presumptive lim-

its. We do not have jurisdiction to consider the plea bargain argument on direct appeal.

## Cumulative Error

Stephens' last claim is grounded on cumulative error. The test for cumulative error is whether the totality of circumstances substantially prejudiced the defendant and denied the defendant a fair trial. *Taylor v. State*, 251 Kan. 272, Syl. ¶ 6, 834 P.2d 1325 (1992). Stephens has failed to show any error during trial that prejudiced him.

Affirmed.