No. 83,341

STATE OF KANSAS, *Appellee*, v. DANIEL MEDRANO, *Appellant*.

(23 P.3d 836)

Opinion filed June 1, 2001.

*Cory D. Riddle*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: Daniel Medrano was certified to stand trial as an adult; he was 17 years old. He then pled guilty to first-degree felony murder, criminal discharge of a firearm at an occupied building, and two counts of attempted first-degree murder. The sole issue before us is Medrano's appeal of his certification to stand trial as an adult.

On July 21, 1998, Medrano was driving his father's newly acquired car. He threw an empty bottle out of the car, and when it did not break, he backed up to pick it up. In backing up, he backed into another vehicle, doing damage to his father's car.

Medrano was a member of the Vato Loco Boys gang. He rounded up several other members of his gang and told them that the rival street gang, the Surrenos, had damaged his father's car. Eight people, ranging in ages from 15 to 20 years of age, left in a Lincoln car armed with a .22 caliber Remington rifle, a 20-gauge semiautomatic shotgun, and a baseball bat. They went to territory occupied by the Surrenos gang for the express purpose to shoot a member of the rival gang.

At approximately 10:30 p.m., Ricky Delorea and Manuel Galvan III were sitting outside the front of Galvan's home on the trunk of a car. Galvan's 8-year-old brother Antonio was outside near the porch playing with his puppy. As the Lincoln approached the boys, someone from inside the car yelled "Loco Boys." Ricky and Manuel ducked and heard a shotgun blast. Somebody yelled "load it up" and the boys heard two more blasts. Immediately after the shooting, Medrano stated that he wanted to go back because he had not had an opportunity to shoot. Although Medrano had pointed the .22 rifle out of the window, it would not fire because it was jammed.

The two boys by the car were not hit, although a shotgun blast hit the home while family members were inside. Antonio, however, was fatally wounded by buckshot from the 20-gauge shotgun, with entry wounds to his head.

Police subsequently spotted the Lincoln and arrested the passengers inside. Prior to being stopped, Medrano tossed the .22 rifle out of the window. A complete account of the background of this

case can be found in *State v. Saiz*, 269 Kan. 657, 7 P.3d 1214 (2000).

On September 9, 1998, the district court held a preliminary hearing/adult certification hearing. Medrano was certified as an adult and bound over for trial.

On January 15, 1999, Medrano pled guilty to one count of first-degree felony murder while in the perpetration of attempted first-degree murder and/or criminal discharge of a firearm at an occupied building, one count of criminal discharge of a firearm at an occupied building, and two counts of attempted first-degree murder.

At his guilty plea hearing, Medrano discussed the death of Antonio and stated:

"On July 21, 1998, I wrecked my car. I spread a story about my car being hit by gang members. This story was not true. Me and my friends talked about shooting a sur 13 gang member as revenge. Although most of us knew the wreck didn't happen. I never told the others it was not true.

"Some of the people at the house were Vato Loco boys gang members and sur 13 are a rival gang. My gang got in the car and rode to Plainview in Wichita, Kansas. We had a shotgun and a rifle in the car.

"We saw two or three boys sitting on a car. We figured they were sur 13 gang members. Our car slowed down next to them. I pointed the rifle at the car and tried to shoot but my gun wouldn't fire.

"Isaac Saiz, my friend, aimed the shotgun out his window and fired the gun attempting to shoot the boys on the car. Isaac's shots missed the boys on the car, but some of the shots hit a house and some hit a little eight-year-old boy named Tony Galvan who was playing with his puppy.

"After we left, the police chased us, and I threw the rifle out of my window. I didn't see the boy. I'm sorry that he died. I screwed up. I'm sorry for the victims and my family. I wish this would have never happened."

Medrano was eventually sentenced to life in prison plus 412 months pursuant to K.S.A. 2000 Supp. 21-4720(b)(4). Medrano filed a timely notice of appeal. This court has jurisdiction pursuant to K.S.A. 22-3601(b)(1).

Medrano argues that the district court erred in certifying him as an adult. The standard for reviewing the decision to authorize prosecution as an adult is whether the decision is supported by substantial evidence. *In re J.D.J.*, 266 Kan. 211, 216, 967 P.2d 751 (1998); *State v. Claiborne*, 262 Kan. 416, 420, 940 P.2d 27 (1997).

Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can be reasonably be resolved. *State v. Garcia*, 250 Kan. 310, Syl. ¶ 3, 827 P.2d 727 (1992). It is not for this court to reweigh the evidence, substitute its evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. *In re J.D.J.*, 266 Kan. at 223.

K.S.A. 38-1636(e) does not require the magistrate to mention the factors used in certifying a juvenile to be tried as an adult when rendering the decision. The court's standard for certifying applies to the evidence rather than to the analysis of the decision maker. *State v. Avalos*, 266 Kan. 517, 521, 974 P.2d 97 (1999).

K.S.A. 38-1636(a) governs prosecution as an adult and sets forth in pertinent part:

"(2) At any time after commencement of proceedings under this code against a respondent who was: (A) 14, 15, 16 or 17 years of age at the time of the offense or offenses alleged in the complaint, if any such offense (i) if committed by an adult, would constitute an offgrid offense, a person felony, a nondrug severity level 1 through 6 felony or any drug severity level 1 or 2 felony; or (ii) was committed while in the possession of a firearm; or (B) charged with a felony or with more than one offense of which one or more constitutes a felony after having been adjudicated or convicted in a separate prior juvenile proceeding as having committed an offense which would constitute a felony if committed by an adult and the adjudications or convictions occurred prior to the date of the commission of the new act charged and prior to the beginning of an evidentiary hearing at which the court may enter a sentence as provided in K.S.A. 38-1655, and amendments thereto, the county or district attorney may file a motion requesting that the court authorize prosecution of the respondent as an adult under the applicable criminal statute. *The respondent shall be presumed to be an adult. The burden of proof is on the respondent to rebut the presumption.*" (Emphasis added.)

K.S.A. 38-1636(e) sets forth the factors to be considered when determining whether to treat a defendant as an adult or a juvenile. These factors must be considered by the court even where there is a presumption that the defendant is an adult under 38-1636(a)(2). K.S.A. 38-1636(e) states in pertinent part:

"In determining whether or not prosecution as an adult should be authorized or designating the proceeding as an extended jurisdiction juvenile prosecution, the court shall consider each of the following factors: (1) The seriousness of the alleged offense and whether the protection of the community requires prosecution

as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution."

The insufficiency of evidence pertaining to any one or more of the factors listed in K.S.A. 38-1636(e) shall not, in and of itself, be determinative of the issue. *In re J.D.J.*, 266 Kan. at 218. There is no requirement that evidence be presented on each and every factor set forth in the statute. *State v. Stephens*, 266 Kan. 886, 892, 975 P.2d 801 (1999). In *Stephens*, we said:

"The district court was required to consider the eight factors set forth in K.S.A. 38-1636(e). The court was not required to make adverse findings on each of the eight factors. The insufficiency of the evidence concerning one or more factors listed in K.S.A. 38-1636(e) is not determinative. *State v. Claiborne*, 262 Kan. 416, Syl. ¶ 2, 940 P.2d 27 (1997). The legislature rejected a numerical quantification of factors when it said: 'The insufficiency of evidence pertaining to any one or more of the factors listed in this subsection shall not in and of itself be determinative of the issue.' K.S.A. 38-1636(e). The question then is not whether a finding of four factors was enough, but whether there was substantial evidence to support the district court's conclusion that Stephens should be tried as an adult.

"Today, a juvenile aged 14 or more who is charged with an off-grid offense is presumed to be an adult. K.S.A. 1998 Supp. 38-1636(a)." 266 Kan. at 892.

Medrano concedes that there was sufficient evidence to support statutory factors 1 through 3. The first factor is supported by the fact that Medrano was charged with first-degree murder. The second factor is supported by the fact that the drive-by shooting was motivated by a fictitious story told by Medrano. The third factor is supportable as the offenses were against persons.

Medrano had no prior or pending adjudications which would support the fourth factor and had no previous history of antisocial behavior or patterns of physical violence which would support the fifth factor. Medrano had not attended high school for 1 ½ years but did work at a Catholic care center. Medrano argues that the eighth factor is in his favor as the interests of the community would not be better served by prosecuting him as an adult. We disagree.

The first three statutory factors are especially strong in this case. The evidence at the preliminary hearing indicated that Medrano was the catalyst and a major participant in the criminal acts which culminated in the first-degree murder of an innocent 8-year-old boy. Medrano lied about the damage to his vehicle and blamed the damage on a rival gang. Medrano was the one who suggested retaliation. The shooting was committed in a residential area and shots were fired at an occupied building and two others sitting on a car in front of the residence. After the initial shotgun blasts, Medrano suggested that they return to shoot again because his gun had jammed.

There was substantial evidence to support the certification of Medrano as an adult. The district court did not err in trying Medrano as an adult.

Affirmed.