(155 P.3d 1207)
No. 93,907

STATE OF KANSAS, *Appellee,* v. JEREMY D. DAVIS, *Appellant.*

Opinion filed April 20, 2007.

*Elizabeth Seale Cateforis,* of Paul E. Wilson Defender Project of University of Kansas School of Law, of Lawrence, for appellant.

*Kristi L. Barton,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before BUSER, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: Jeremy Davis appeals his jury trial conviction for aggravated robbery in violation of K.S.A. 21-3427. First, Davis argues that the trial court erred in overruling his objection under *Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), to the State's use of peremptory challenges to strike the only two African-American members of the jury panel. Because the trial court never conducted a full analysis under step three of *Batson* and thus never reached the ultimate determination of whether Davis had shown purposeful discrimination by the State, we reverse on this issue and remand the case to the trial court for a proper *Batson* hearing. In the event the trial court determines that the reason given for striking either of the two minority jurors was pretextual, the trial court shall grant Davis a new trial. Davis also argues that the trial court erred in authorizing prosecution as an adult. Nevertheless, substantial evidence exists in the record to support the trial court's decision to authorize prosecution of Davis as an adult. Therefore, Davis' argument fails. Accordingly, we affirm in part, reverse in part, and remand for a proper *Batson* hearing.

Davis' conviction in this case stems from a robbery that occurred at a CB Express Store in Wichita in November 2003. During the robbery, a male wearing pantyhose over his head held a knife to the throat of Carl Blackmon, a clerk at the CB Express Store, and demanded money. Before the person could take any money, however, he bumped his head and stumbled out of the store. Although the male did not take any money, he took beer and cigarettes from the store. Blackmon called 911.

As Officer Brian Hightower was responding to the 911 call, he saw a car speeding away from the shopping center where the CB Express Store was located. Hightower followed the car. The car eventually stopped in the driveway of a residence, and a male got out of the front seat of the car and ran into the house. Hightower ran after the male and encountered Davis' mom at the front door. Initially, Davis' mom said that she had not seen anyone run into her house. Nevertheless, Davis' mom eventually told Hightower that Davis ran into the house. Officers later found Davis in his boxer shorts crouching behind a shed. Officers recovered cartons of cigarettes and a case of beer from the car. In addition, a knife was found on top of the dashboard on the front passenger's side of the car. Davis was 17 years old at the time.

Davis was charged with aggravated robbery in violation of K.S.A. 21-3427. The State moved for authorization to prosecute Davis as an adult. At the conclusion of an evidentiary hearing held on the State's motion, the trial court authorized the prosecution of Davis as an adult. The trial court later issued a journal entry setting forth in detail its findings for its decision to prosecute Davis as an adult.

Davis' case proceeded to a jury trial. After voir dire proceedings, Davis objected under *Batson*, 476 U.S. 79, to the State's use of its peremptory challenges to eliminate the two African-Americans from the 28-member jury panel. Nevertheless, the trial court found that the State's reasons for eliminating the two African-American panel members were race neutral and overruled Davis' objection.

At trial, Davis testified that he and Blackmon had staged the robbery. According to Davis, he and Blackmon agreed that Davis would come into the store with a knife and grab cigarettes and beer. Davis' defense was that there had been no taking by threat

of bodily harm, a necessary element of aggravated robbery. Nevertheless, the jury convicted Davis of aggravated robbery. The trial court imposed a downward dispositional departure sentence and placed Davis on probation for 36 months, with an underlying prison term of 55 months.

## I. Batson Challenge

First, Davis argues that the trial court erred in overruling his objection under *Batson* to the State's use of peremptory challenges to strike the only two African-American members of the jury panel.

Our Supreme Court in *State v. Pham*, 281 Kan. 1227, Syl. ¶ 3, 136 P.3d 919 (2006), set forth the three-step process under *Batson* for analyzing a defendant's argument that the State has used peremptory challenges to eliminate potential jurors on the basis of race:

"The *Batson* analysis involves a three-step process. First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. In this second step, the prosecutor is only required to put forth· a facially valid reason for exercising a peremptory strike. Finally, the trial court must determine whether the defendant has carried his or her burden of proving purposeful discrimination."

Moreover, our Supreme Court in *Pham* set forth the standards applicable to each step of the process:

"The standard of review of the first step—the prima facie showing on the basis of race—is a question of legal sufficiency subject to plenary review. *State v. Bolton*, 274 Kan. 1, 9, 49 P.3d 468 (2002).

"Regarding the second step—the prosecutor's burden to show a race-neutral explanation for striking the jurors in question—it does not demand a prosecutor's explanation that is persuasive, or even plausible, but merely facially valid. See *State v. Vargas*, 260 Kan. 791, Syl. ¶ 3, 926 P.2d 223 (1996). Further, unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. Accordingly, the ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike. *State v. Vargas*, 260 Kan. 791, Syl. ¶ 3.

"Finally, the standard of review of the third step—the trial court's decision on the ultimate question of whether the defendant has carried the burden of proving purposeful discrimination—is greatly deferential because the determination is fac-

tual. *State v. Walston*, 256 Kan. 372, 379, 886 P.2d 349 (1994)." *Pham*, 281 Kan. at 1237.

After voir dire, defense counsel objected to the State's use of its peremptory challenges to eliminate prospective jurors V.S. and E.C., the only African-American members of the 28-member jury panel. In responding to defense counsel's objection, the prosecutor first asserted that Davis had to show that he was African-American, which was not clear in the case. Nevertheless, the trial court noted that the complaint and information listed Davis as an African-American male.

The prosecutor then set forth his reasons for eliminating the two African-American jury panel members. Concerning E.C., the prosecutor stated:

"Your Honor, I was prepared to keep [E.C.] up until [defense counsel] questioned him this morning and [E.C.]—and I don't recall the specific question asked by [defense counsel], but [E.C.] replied that—I think it was on the burden of proof. And he said certainly given the—what's at stake in this case.

"And I have talked to the jury about the fact that they shouldn't consider the penalty and that that doesn't help us determine whether or not he committed this crime; yet [E.C.] expressed a correlation between the burden of proof and what is at stake, which lead[s] me to believe that he does think about the penalty in terms of the burden of proof. And that's why I struck him."

During voir dire proceedings, defense counsel had questioned E.C. about whether he thought the State's burden of proof was unfair. He responded: "No, not for what's at stake here. Defense counsel questioned him further: "I believe you said not for what's at stake here?" He responded, "I mean, you know, a person's freedom."

The prosecutor set forth his reasons for eliminating V.S. as follows:

"[V.S.], Your Honor, struck me as someone who was overly intelligent, overly— his answers were, I thought, highly educated, he—I did not want someone who would overanalyze this case. And [V.S.], by his answers to me, struck me as someone who would in fact overanalyze the case and perhaps be a difficult witness— I mean, I'm sorry, a difficult juror on fine details and I did not want that."

After the prosecutor gave his reasons for eliminating the prospective jurors, the trial court asked defense counsel if she had any response. Before defense counsel could answer, however, the pros-

ecutor stated, "Your Honor, I would object to [defense counsel] giving any response. The law says all I have to do is give a race-neutral reason." The trial court then stated:

"That's true. *Then I will go ahead and make a decision.* And the decision is that *as to* [E.C.], I heard that and I have no problem with that. As to [V.S.], I am not sure that I'm in agreement with that, because of the fact he's been a juror before and as I recall that he was able to come to a conclusion. I don't recall whether that was a civil case or a criminal case, however." (Emphasis added.)

The prosecutor then informed the trial court that it needed to find whether he had given a race-neutral reason and that the trial court could not second guess his judgment: "Your Honor, I would just ask the Court whether my reason was race neutral or not. And I believe the status of the law is if I give a race neutral reason and the Court finds it is race neutral, the Court itself cannot even second guess my judgment." After finding that the prosecutor had given race-neutral reasons for eliminating the potential jurors, the trial court warned defense counsel, in the future, to immediately make a *Batson* objection upon the prosecutor's striking of a venireperson.

## A. Standing

Davis first contends that in the above discussion, the prosecutor misstated the law when he told the trial court that Davis had to be African-American in order to challenge the striking of African-American prospective jurors.

Our Supreme Court in *Pham* made clear that a defendant has standing to raise a *Batson* challenge based upon the striking of members of a cognizable minority group even when the defendant is not a member of such group. 281 Kan. at 1237. Our Supreme Court cited *State v. Edwards*, 264 Kan. 177, 193, 955 P.2d 1276 (1998), where it had previously held that a defendant need not establish that he or she is a member of a cognizable minority group because the focus is on the individual rights of the jury members not to be excluded based on race or gender. 281 Kan. at 1237-38.

Similar to the reasoning in *Edwards*, the Missouri Court of Appeals has recognized that an African-American citizen has a right

to serve on a jury and that this right can only be impaired for cause or legitimate and rational reason through a peremptory strike:

"Every citizen has a right as well as obligation to participate in our democratic process. Jury service is perhaps the most important means after voting and free speech, Consequently, as a matter of constitutional right and fundamental equality, an African-American has a right to serve on a jury that can only be impaired for cause or legitimate and rational reason through a peremptory strike. . . . The right of a party to peremptorily strike a juror must always give way to a right of [a] citizen to participate in our judicial system without regard to race, gender or national origin. To do otherwise undermines the respect for the rule of law upon which a peaceful democracy is based." *State v. Livingston*, ____ S.W.3d ____, ____ (Mo. App. 2007) (No. WD64677, filed January 30, 2007, *reh. denied* April 3, 2007).

Here, Davis could challenge the State's use of peremptory challenges to exclude African-American prospective jurors regardless of whether he was African-American. There is no reversible error on the issue of standing, however, because the trial court, after noting that Davis was described as an African-American male in the complaint and information, proceeded to rule on Davis' *Batson* challenge.

## B.    Three-Step Process in Analyzing Batson Challenge

Next, Davis contends that although the trial court ultimately rejected his *Batson* challenge, "the record of voir dire shows, and the court's initial ruling, demonstrates that the reasons offered for the strikes were pretextual and that the jurors were struck based on their race." Davis' argument can be addressed by considering each step in the three-step process that a court is required to use in deciding a *Batson* challenge.

### 1. Prima Facie Showing of Purposeful Discrimination

Under the three-step process outlined above, Davis must first make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of race. Davis argued before the trial court that the prosecutor had used his peremptory challenges to exclude the only two African-American members of the 28-member jury panel. Moreover, Davis pointed out that the prosecutor had done this "in the first three picks." In *State v. Trotter*,

280 Kan. 800, 127 P.3d 972 (2006), the prosecutor struck all but one of the prospective African-American jurors from the jury panel. The defendant struck the remaining African-American member, leaving only one African-American member as an alternate on the final jury panel. Our Supreme Court held that "[l]ooking at the numbers alone suggests discrimination existed in this case." 280 Kan. at 813; see also *Pham*, 281 Kan. at 1238 (concluding that defendant had made prima facie showing that prosecutor had struck two Hispanic prospective jurors on basis of their ethnicity). Here, it is apparent that Davis has made a prima facie showing that the prosecutor excluded E.C. and V.S., who were the only African-American members of the jury panel, on the basis of race.

## 2. *Race-Neutral Reasons*

After Davis made a prima facie showing that the prosecutor excluded V.S. and E.C. on the basis of race, the prosecutor had the burden to come forward with a race-neutral reason for striking these prospective jurors. As discussed above, under this second step, the prosecutor's explanation does not have to be persuasive or plausible but merely facially valid. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason will be deemed race neutral. *Pham*, 281 Kan. at 1237. The persuasiveness of the justification does not become relevant until the third step, where the trial court determines whether the defendant has carried his burden of proving purposeful discrimination. *Purkett v. Elem*, 514 U.S. 765, 768, 131 L. Ed. 2d 834, 115 S. Ct. 1769 (1995).

Here, the prosecutor stated that he struck E.C. because E.C.'s answer to a particular question led the prosecutor to believe that E.C. thought about the penalty in terms of the burden of proof. In addition, the prosecutor stated that he struck V.S. because V.S.'s answers to the prosecutor's questions indicated that V.S. was someone who would overanalyze the case and might be a difficult juror on fine details.

The reasons given by the prosecutor were race neutral, and there was no error by the trial court under this second step of the analysis.

### 3. *Purposeful Discrimination*

Under the third step of the analysis, the trial court was required to determine whether Davis had proved purposeful discrimination. *Purkett*, 514 U.S. at 767. The problem here is that the trial court never determined whether Davis had met his burden to prove purposeful discrimination. Although the trial court made some initial findings indicating that the prosecutor's explanation of striking at least one of the minority jurors might not have been credible, the trial court never conducted a full analysis under the third *Batson* step.

The trial court's failure to fully conduct the analysis under the third *Batson* step seems to have resulted from the prosecutor's representations to the trial court. When the trial judge asked defense counsel for her response to the prosecutor's explanation for striking the African-American jurors, the prosecutor objected to defense counsel "giving any response" and stated, "The law says all I have to do is give a race-neutral reason." Nevertheless, although the prosecutor needed to come forward with a race-neutral reason under the second *Batson* step, Davis had the ultimate burden to prove purposeful discrimination by the prosecutor. Therefore, the prosecutor should not have cut off defense counsel's opportunity to respond to the prosecutor's explanations for striking the minority jurors. Moreover, when the trial court began analyzing the prosecutor's reasons for striking the minority jurors, the prosecutor interjected himself and brought the trial court back to the second *Batson* step, stating, "I believe the status of the law is if I give a race-neutral reason and the Court finds it is race neutral, the Court itself cannot even second guess my judgment."

Nevertheless, after a trial court finds that a prosecutor's reasons for striking prospective jurors are race neutral under step two of the *Batson* analysis, the trial court is allowed to second guess the prosecutor's statements. Recognizing that the analysis under this third step is based largely on credibility, our Supreme Court in *State v. Campbell*, 268 Kan. 529, 534, 997 P.2d 726, *cert. denied* 531 U.S. 832 (2000), stated:

"Where a prosecutor offers an explanation for striking a juror which does not relate to the characteristics of any particular race, such reason is race-neutral and

it is then for the trial court to determine whether the prosecutor was motivated by some discriminatory intent—an analysis which is largely credibility based."

The trial court is required to evaluate the credibility of the prosecutor in explaining the reason for striking a minority juror, and an appellate court gives great deference to this evaluation. *Trotter*, 280 Kan. at 812.

Here, once the trial court found that the prosecutor's reasons were race neutral, the trial court ended its analysis of Davis' *Batson* challenge. The trial court never conducted a full analysis under step three and never reached the ultimate determination of whether there was purposeful discrimination.

Neither party disputes that the trial court failed to make the ultimate determination under step three of whether Davis had met his burden to prove purposeful discrimination. In fact, the State never goes to step three of the *Batson* analysis in its brief. Instead, the State maintains that the trial court's determination was reasonable based upon V.S.' and E.C.'s responses during voir dire and the prosecutor's explanation for striking these prospective jurors. On the other hand, Davis contends that the record of the voir dire proceedings and the trial court's initial findings show that the prosecutor's reasons for striking the minority jurors were pretextual and that the jurors were struck based on race. Thus, Davis urges this court to reverse his case and remand for a new trial.

To accept either party's argument, however, this court would have to make the ultimate factual determination concerning whether Davis carried his burden of proving purposeful discrimination. This determination is properly left to the trial judge who presided over the voir dire proceedings and heard the prosecutor's explanations for striking the minority jurors. Quoting *Hernandez v. New York*, 500 U.S. 352, 364-65, 114 L. Ed. 2d 395, 111 S. Ct. 1859 (1991), our Supreme Court in *Pham*, stated the following:

" ' "Deference to the trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in *Batson*, the finding will 'largely turn on evaluation of credibility.' [Citation omitted.] *In the typical peremptory challenge inquiry, the decisive questions will be whether counsel's race-neutral explanation for a peremptory challenge should be believed.* There will seldom be much evidence bearing on that issue, and the best evidence often will

be the demeanor of the attorney who exercises the challenge. . . . [The evaluation of which] lies 'peculiarly within a trial judge's province.' [Citations omitted.]" ' " 281 Kan. at 1237.

Although the trial court made some initial findings concerning the prosecutor's reasons for striking the minority jurors, the trial court never conducted a full analysis under the third step and never reached the ultimate determination of whether there was purposeful discrimination.

Regardless of whether the trial court's decision is characterized as collapsing the second and third *Batson* steps together or failing to proceed under step three, the trial court erred. In *Purkett*, the United States Supreme Court held that the Eighth Circuit Court of Appeals erred in collapsing the second and third *Batson* steps into one by requiring that the justification tendered at the second step be not only neutral but also at least minimally persuasive. 514 U.S. at 768. At the second step, "implausible or fantastic justifications," including "a silly or superstitious reason" are sufficient to require the process to go to step three. 514 U.S. at 768. The United States Supreme Court remanded the case with directions for the Eighth Circuit Court of Appeals to proceed to step three. 514 U.S. at 770. "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." 514 U.S. at 768.

In *Bolton*, 271 Kan. 538, Syl. ¶ 4, our Supreme Court remanded the case for a *Batson* hearing because the trial court failed to properly analyze the defendant's challenge to the prosecutor's use of peremptory strikes to exclude minority jurors under the three steps outlined in *Batson*. Similarly, in this case, the trial court's failure to properly analyze Davis' challenge to the prosecutor's use of peremptory strikes to exclude V.S. and E.C. from the jury under the third *Batson* step requires that the case be remanded for a proper *Batson* hearing.

In remanding this case for a proper *Batson* hearing, we point out that a *Batson* challenge can be based on the improper exclusion of even one juror. See *J.E.B. v. Alabama*, 511 U.S. 127, 142 n.13, 128 L. Ed. 2d 89, 114 S. Ct. 1419 (1994) ("The exclusion of even one juror for impermissible reasons harms that juror and under-

mines public confidence in the fairness of the system."). Therefore, if the trial court finds that Davis met his burden to show purposeful discrimination as to at least one of the jurors, then Davis is entitled to a new trial.

Moreover, we point out that the United States Supreme Court's decision in *Miller-El v. Dretke*, 545 U.S. 231, 251-52, 162 L. Ed. 2d 196, 125 S. Ct. 2317 (2005), might impact the ultimate determination of whether there was purposeful discrimination in this case. We will discuss *Miller-El's* impact on prospective jurors E.C. and V.S. separately.

*Prospective Juror E.C.*

The prosecutor stated that he struck E.C. for the following reason: "[E.C.] expressed a correlation between the burden of proof and what is at stake, which lead[s] me to believe that he does think about the penalty in terms of the burden of proof." The prosecutor was referring to the following dialogue that occurred between defense counsel and E.C. concerning the burden of proof in a criminal case:

"[Defense counsel]: . . . [The prosecutor] has the burden, it's beyond a reasonable doubt and it stays with him during the whole trial. Now, let me ask [E.C.], do you agree with that part of our legal justice system?

"[E.C.]: I do.

"[Defense counsel]: You understand . . . I mean, you don't think it's an unfair burden that's placed on the State or [the prosecutor] as their representative?

"[E.C.]: No, not for what's at stake here.

"[Defense counsel]: I believe you said not for what's at stake here?

"[E.C.]: I mean, you know, a person's freedom."

E.C.'s response was absolutely correct as to why the State has the burden to prove guilt beyond a reasonable doubt in a criminal case. Recognizing that a defendant's freedom and reputation are at stake in a criminal case, the United States Supreme Court in *In re Winship*, 397 U.S. 358, 363-64, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), stated the following regarding the burden of proof beyond a reasonable doubt:

"The requirement of proof beyond a reasonable doubt has this vital role in our criminal procedure for cogent reasons. The *accused during a criminal prosecution*

*has at stake interest of immense importance*, both because of *the possibility that he may lose his liberty upon conviction* and because of *the certainty that he would be stigmatized by the conviction*. Accordingly, a society that values the good name and freedom of every individual should not condemn a man for commission of a crime when there is reasonable doubt about his guilt." (Emphasis added.)

E.C.'s answer to the question posed to him was a correct statement of why the State carries such a high burden of proof in a criminal case.

Nevertheless, the State mischaracterized E.C.'s testimony as saying he could not reach a decision on the evidence without considering the penalty involved. Nowhere in his response, however, does he refer to the penalty involved in this case. Lack of support in the record for the reason given for a peremptory strike has been identified as an indicator of pretext. See *Miller-El*, 545 U.S. at 252.

### Prospective Juror V.S.

At voir dire, the prosecutor stated that he struck V.S. because V.S. appeared to be overly intelligent and his answers indicated that he would overanalyze the case and get stuck on fine details. On appeal, the prosecutor now points to a variety of facts that would support its decision to strike V.S. from the jury, including the fact that V.S. had previously worked as a clerk at a convenience store and had undergone some training on how to handle a robbery. Nevertheless, the prosecutor never provided this explanation at the time of Davis' *Batson* challenge as a reason for excluding V.S. from the jury.

Holding that a prosecutor must stand or fall on his explanation for eliminating prospective jurors given at the time of the *Batson* challenge, the United States Supreme Court in *Miller-El*, 545 U.S. at 251-52, stated:

"As for law, the rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it. [Citations omitted.] It is true that peremptories are often the subjects of instinct, [citation omitted], and it can sometimes be hard to say what the reason is. *But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.* A *Batson* challenge does not call for a mere exercise in thinking up any rational

basis. *If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false."* (Emphasis added.)

Under *Miller-El*, the State must stand or fall on the prosecutor's explanation that he struck V.S. from the jury panel because V.S. seemed to be highly intelligent and that V.S.' responses to the prosecutor's questions indicated that he might overanalyze the evidence and get stuck on fine details.

Moreover, although the State refers in its brief to a response where V.S. named the burden of proof in a civil case, the State mischaracterizes V.S.' response. V.S. did not give the correct burden of proof until he was coaxed by defense counsel. When defense counsel first asked V.S. if he remembered what the burden of proof was in a civil trial, V.S. erroneously stated that the plaintiff had the burden of proof beyond a reasonable doubt. Defense counsel then stated, "Well, was it beyond a reasonable doubt or was it just a preponderance of the evidence?" V.S. then responded that the burden of proof was preponderance of the evidence.

A review of the voir dire transcript reveals that the information provided by V.S. indicating that he might be overly intelligent or that he might overanalyze the case was that he was a master control operator for a television station and that he had previously served on a civil jury. The final jury panel, however, contained members who had jobs that would require highly technical tasks or higher education. Moreover, one of the final members had previously been on the jury of a criminal trial. The United States Supreme Court in *Miller-El* recognized: "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step. [Citation omitted.]" 545 U.S. at 241. On remand, the trial court should consider whether the final jury members would fit within the prosecutor's proffered reasons for striking V.S.

## *Prosecution as an Adult*

Finally, Davis argues that the trial court erred in authorizing him to be prosecuted as an adult. An appellate court reviews the trial

court's decision to authorize prosecution of a juvenile as an adult to determine whether there is substantial evidence in the record to support the decision. *State v. Medrano*, 271 Kan. 504, 506-07, 23 P.3d 836 (2001). "Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved." *State v. Luna*, 271 Kan. 573, 574-75, 24 P.3d 125 (2001). An appellate court does not reweigh the evidence, determine the credibility of witnesses, or substitute its evaluation of the evidence for that of the trial court. *Medrano*, 271 Kan. at 507.

Under the relevant portion of K.S.A. 38-1636(a)(2), the State may move for authorization to prosecute a juvenile as an adult when the juvenile is at least 14 years old at the time of the alleged offense and is charged with an offense that, if committed by an adult, would be a nondrug severity level 1 through 6 felony. Under such circumstances, the juvenile is presumed to be an adult, and the burden of proof is on the juvenile to rebut the presumption. K.S.A. 38-1636(a)(2).

K.S.A. 38-1636(e) lists the following eight factors that a trial court shall consider in determining whether to authorize the prosecution of a juvenile as an adult:

"(1) The seriousness of the alleged offense and whether the protection of the community requires prosecution as an adult or designating the proceeding as an extended jurisdiction juvenile prosecution; (2) whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner; (3) whether the offense was against a person or against property. Greater weight shall be given to offenses against persons, especially if personal injury resulted; (4) the number of alleged offenses unadjudicated and pending against the respondent; (5) the previous history of the respondent, including whether the respondent had been adjudicated a juvenile offender under this code and, if so, whether the offenses were against persons or property, and any other previous history of antisocial behavior or patterns of physical violence; (6) the sophistication or maturity of the respondent as determined by consideration of the respondent's home, environment, emotional attitude, pattern of living or desire to be treated as an adult; (7) whether there are facilities or programs available to the court which are likely to rehabilitate the respondent prior to the expiration of the court's jurisdiction under this code; and (8) whether the interests of the respondent or of the community would be better served by criminal prosecution or extended jurisdiction juvenile prosecution."

Here, Davis concedes that he was presumed to be an adult under K.S.A. 38-1636(a)(2) because he was 17 years old at the time of the alleged offense and had been charged with an offense that, if committed by an adult, would constitute a nondrug severity level 3 felony. Therefore, Davis had the burden to rebut the presumption that he was an adult. K.S.A. 38-1636(a)(2). Nevertheless, the trial court is still required to consider the factors under K.S.A. 38-1636(e) even when the juvenile is presumed to be an adult under K.S.A. 38-1636(a)(2). *State v. Hartpence*, 30 Kan. App. 2d 486, 488, 42 P.3d 1197 (2002).

Davis maintains that the trial court, in ruling from the bench, did not conduct a balanced analysis of all the factors under K.S.A. 38-1636(e) and relied primarily on the seriousness of the crime and Davis' performance in the juvenile justice system. Davis concedes, however, that the trial court's written journal entry reflects a consideration of all the factors under K.S.A. 38-1636(e).

A review of the trial court's ruling from the bench, along with the written journal entry, demonstrates that the trial court adequately considered the factors under K.S.A. 38-1636(e) in authorizing the prosecution of Davis as an adult. Substantial evidence exists in the record to support the trial court's decision to authorize the prosecution of Davis as an adult.

Affirmed in part, reversed in part, and remanded for a proper *Batson* hearing.

BUSER, J., concurring. I concur in the holding and the rationale in support of this decision. Our panel was correct to suggest that the precedent enunciated in *Miller-El v. Dretke*, 545 U.S. 231, 251-52, 162 L. Ed. 2d 196, 125 S. Ct. 2317 (2005), should guide the district court's deliberations on remand. I write separately, however, because I would have refrained from analyzing the third step of the *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), test as it relates to these two peremptory challenges prior to the district court's consideration and ruling on remand.