NOT DESIGNATED FOR PUBLICATION

No. 119,005

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

FRANCISCO JAVIER DELIRA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Thomas District Court; KEVIN BERENS, judge. Opinion filed May 31, 2019. Affirmed in part, vacated in part, and remanded with directions.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Rachel Lamm*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER, J., and MCANANY, S.J.

PER CURIAM:  Francisco Delira appeals his conviction of possession of methamphetamine with intent to distribute. Delira claims:  (1) the district court erred in denying his motion to suppress; (2) the district court erred in denying his challenge to the State's peremptory strike of a potential juror under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986); and (3) the district court abused its discretion in ordering him to pay $5,423.84 in Board of Indigents' Defense Services (BIDS) attorney fees. We grant relief to Delira only on the third issue.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On August 24, 2016, Officer Cole Andreasen of the Colby Police Department stopped Delira for failing to use a turn signal at least 100 feet before turning onto an I-70 entrance ramp. Andreasen told Delira why he had pulled him over and briefly visited with him about his travel plans. Andreasen asked Delira for his driver's license and rental agreement for the car. He returned to his patrol car, checked the documents, and returned them to Delira.

Andreasen did not give Delira a ticket but instead gave him a verbal warning and told him to "drive safe[ly]." He turned away to walk back to his car when he heard Delira say something. Andreasen turned back to Delira's car and Delira said, "Have a good one." Andreasen again turned to walk back to his patrol car and as he did, Delira asked Andreasen his name. Andreasen returned to Delira's car, told Delira his name, and shook his hand. Andreasen then asked Delira if he would speak with him further, and Delira said yes.

Andreasen inquired more about Delira's travel plans. Andreasen then asked Delira if he had any illegal drugs, currency, or weapons in his car. Delira said no. Andreasen then asked if Delira had "any personal use marijuana in the vehicle." Delira told Andreasen that he had "what was left of a joint."

Andreasen searched the rental car and found a "tiny piece of what was left of a [marijuana] joint" in the glove compartment. Andreasen searched the rest of the car and at first found no other drugs or evidence of a crime. Although he already had searched the trunk, Andreasen decided to search it again and pulled up the carpet and side panels of the trunk. He found five bags of methamphetamine within the side panels. Andreasen arrested Delira after the search.

The next day, the State charged Delira with one count of possession of methamphetamine with intent to distribute. Delira later filed a motion to suppress his statements and any evidence found from the search of his car. The motion argued that the search exceeded the scope of Delira's consent and that all evidence seized in the search should be suppressed as fruit of the poisonous tree. After holding a hearing, the district court denied the motion to suppress.

The case proceeded to a jury trial and at the end of the jury selection, Delira raised a *Batson* challenge. He argued that the State used a peremptory challenge to strike the only member of the jury that was Hispanic—the same ethnicity as Delira. The State informed the court that the potential juror was struck because the juror's mother was in poor health and, if anything happened to her, the juror would be distracted. The district court found there was a nonracial and nondiscriminatory purpose for the strike and denied the *Batson* challenge.

The State presented its evidence, and Delira did not object to the admission of the methamphetamine found during the search of his rental car. After hearing the evidence, the jury found Delira guilty as charged. The district court sentenced Delira to 146 months' imprisonment and ordered him to pay $5,423.84 in BIDS attorney fees. Delira timely appealed the district court's judgment.

MOTION TO SUPPRESS

Delira first claims the district court erred in denying his motion to suppress the drug evidence seized from his car. Delira's brief concedes that he did not make a contemporaneous objection to the evidence at trial. But he argues that we should address the suppression issue anyway because he challenged the evidence in his pretrial motion to suppress and again in a posttrial motion for new trial.

3

Typically, in order to preserve an evidentiary issue for appellate review, a party must make a "contemporaneous objection," in a "specific and timely" manner at trial. K.S.A. 60-404; *State v. Dukes*, 290 Kan. 485, 487-88, 231 P.3d 558 (2010). The Kansas Supreme Court has consistently held that a defendant must contemporaneously object to evidence at a jury trial in order to preserve a claim on appeal that the district court erred by denying a pretrial motion to suppress. See *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014); *State v. Hollingsworth*, 289 Kan. 1250, 1255, 221 P.3d 1122 (2009); *State v. Houston*, 289 Kan. 252, 270, 213 P.3d 728 (2009); *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 (2009).

In *King*, our Supreme Court emphatically stated: "From today forward, in accordance with the plain language of K.S.A. 60-404, evidentiary claims—including questions posed by a prosecutor and responses to those questions during trial—must be preserved by way of a contemporaneous objection for those claims to be reviewed on appeal." 288 Kan. at 349. Although the contemporaneous objection rule has been relaxed in a bench trial on stipulated facts, this exception does not apply here. See *State v. Kelly*, 295 Kan. 587, 594, 285 P.3d 1026 (2012); *State v. Bogguess*, 293 Kan. 743, 746-47, 268 P.3d 481 (2012).

As Delira concedes, he did not object at his jury trial to the admission of the methamphetamine found in the search of his rental car to give the trial court the opportunity to rule on any objection. Based on our Kansas Supreme Court precedent, we find that Delira has failed to preserve the suppression issue for appeal.

## *BATSON* CHALLENGE

Next, Delira claims the district court erred in denying his challenge to the State's peremptory strike of a potential juror under *Batson*. Generally, a party can use peremptory strikes to reject a certain number of jurors without stating a reason. A party

4

may object to a peremptory strike under *Batson*, claiming that the other party's peremptory strike is motivated by purposeful discrimination. If a party objects under *Batson*, the district court must follow a specified procedure to determine if purposeful discrimination motivated the strike. Only after following this procedure may the court allow the strike. *State v. Gonzalez-Sandoval*, 309 Kan. 113, 114-15, 431 P.3d 850 (2018).

Appellate courts engage in a three-step analysis when reviewing *Batson* challenges. Each step of the three-step analysis requires a distinct standard of review:

> "First, the party challenging the strike must make a prima facie showing that the other party exercised a peremptory challenge on the basis of race. Appellate courts utilize plenary or unlimited review over this step.
> "Second, if a prima facie case is established, the burden shifts to the party exercising the strike to articulate a race-neutral reason for striking the prospective juror. This reason must be facially valid, but it does not need to be persuasive or plausible. The reason offered will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The opponent of the strike continues to bear the burden of persuasion.
> "Third, the trial court must determine whether the objecting party has carried the burden of proving purposeful discrimination. This step hinges on credibility determinations. '[U]sually there is limited evidence on the issue, and the best evidence is often the demeanor of the party exercising the challenge. As such, it falls within the trial court's province to decide, and that decision is reviewed under an abuse of discretion standard.' [Citations omitted.]" *State v. Kettler*, 299 Kan. 448, 461-62, 325 P.3d 1075 (2014).

*Step one: Prima facie showing that peremptory challenge is based on race*

Under the first *Batson* step, a defendant alleging discrimination in the jury selection must make out a prima facie case of purposeful discrimination. *Gonzalez-Sandoval*, 309 Kan. at 121. At the end of the jury selection, Delira's attorney and the court had the following discussion:

5

"[Defense Attorney]: . . . I'm challenging that [strike] under the issue that there wasn't anything provided during the voir dire that would indicate that [potential juror] would not be a fair and impartial juror, and she is obviously the only one on that panel of Hispanic descent, of a Hispanic culture. And my client, for the record, is Hispanic.

"[Court]: Okay. Well, under a *Batson* challenge you must present a prima facie case as to—so I guess the only allegation you have is that she was the only Hispanic person on the jury and she was stricken, is that—

"[Defense Attorney]: I'm stating that she's the only one who appears to be of Hispanic ethnicity on the jury panel, Your Honor. She's been stricken by the State. I'm also stating that there was no indication from the answers that she gave during voir dire to the State, I don't believe she gave any to the defense—well, yes, she did give answers to the defense that would indicate any reason that would prevent her from being a fair and impartial juror. And the State now would be [required to] indicate their prima facie reason for removing her from there that would have to meet a non racial reason.

"[Court]: Well I think the case law is that you have to show a prima facie that it was purposeful discrimination. And there's some case law that also says the fact that only on person is of the same ethnicity as the defendant being stricken doesn't actually raise to that level.

"However, for the sake of the record, [Prosecutor], do you have a nondiscriminatory reason for striking [potential juror] from the panel?"

On appeal, the parties dispute whether Delira made a prima facie showing that the State exercised a peremptory challenge on the basis of race. But while the parties dispute this step, the Kansas Supreme Court has found: "When the trial court rules on the ultimate question of discrimination, the preliminary issue of whether the defendant has made a prima facie showing becomes moot." *State v. Bolton*, 271 Kan. 538, 540-41, 23 P.3d 824 (2001); see also, *Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991) (finding issue of prima facie showing of intentional discrimination is moot). Here, the district court made a ruling on the ultimate question of discrimination and so the issue of a prima facie showing is moot.

6

*Step two: The State must establish a neutral, nondiscriminatory reason*

Under the second step of the *Batson* analysis, once a party has established a prima facie case of discriminatory intent, the burden of production shifts to the party making the peremptory strike to come forward with a neutral, nondiscriminatory reason for exercising the peremptory strike. While the burden of production switches, the burden of persuasion rests with, and never shifts from, the opponent of the strike. *Gonzalez-Sandoval*, 309 Kan. at 122.

Here, the State provided the following explanation for submitting a peremptory strike against the potential juror that was the subject of this challenge:

> "She specifically stated that her mother is in questionably poor health and that if anything would happen she would be distracted and want to go be with her mother. That was the defendant's question asked and it has nothing to do with race or bias of any nature. If you need further explanation I could possibly provide that to you."

This explanation by the State gives a race-neutral reason for exercising the peremptory strike. The explanation does not relate to the characteristics of any particular race and thus it is race neutral. See *Hernandez*, 500 U.S. at 360 ("A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror."); see also *Purkett v. Elem*, 514 U.S. 765, 768-69, 115 S. Ct. 1769. 131 L. Ed. 2d 834 (1995) (prosecution's proffered explanation about a potential juror's appearance satisfied its burden of articulating a nondiscriminatory reason for the strike).

*Step three:  Delira's burden to show pretext*

Under the third step of the *Batson* analysis, once the prosecution offers a race-neutral explanation, the defendant bears the burden of showing pretext, which requires the judge to assess the plausibility of that reason in light of all the evidence bearing on it.

7

*Gonzalez-Sandoval*, 309 Kan. at 126. An appellate court reviews the district court's decision on this third step under an abuse of discretion standard. 309 Kan. at 126-27.

Delira argues that the district court did not allow him to have an opportunity to show purposeful discrimination under this step. After the State provided the race-neutral explanation for the strike under step two, the district court found: "I think you've met sufficiently there's a nonracial, nondiscriminatory purpose for your strike, therefore the Court will deny . . . the challenge for *Batson* and allow the strike."

The above-quoted sentence is the entirety of the district court's analysis and findings. Delira argues that the district court did not properly follow the three-step process because it did not allow him to try to prove purposeful discrimination. Delira cites *State v. Davis*, 37 Kan. App. 2d 650, 655-56, 155 P.3d 1207 (2007), to support his argument. In *Davis*, the defendant was denied a chance to respond to the State's reason for striking jurors because the prosecutor objected to any further argument on the ground that the law required the State only to give a race-neutral reason. The prosecutor in *Davis* argued the trial court could not second guess this reasoning and the trial court agreed. On appeal, this court remanded for proper consideration of whether the defendant could show purposeful discrimination after finding the defendant was not allowed to submit any arguments against the State's reasoning. 37 Kan. App. 2d at 659-60.

While *Davis* appears to apply, it is distinguishable. Here, the district court found the State's explanation was race neutral and denied the *Batson* challenge. Nothing in the record suggests that the district court or the State stopped or deterred Delira's attorney from challenging the State's response. Even if the district court only properly completed the second *Batson* step, it was Delira who failed to proceed to the third step and failed to meet the burden required in *Batson*. See *State v. Angelo*, 287 Kan. 262, 277-78, 197 P.3d 337 (2008). In *Angelo*, the trial court denied a *Batson* challenge after completing the second step of the analysis, and the defendant made no attempt to argue that the State's

explanation for the peremptory strike was pretextual. On appeal, the court ruled that although the better practice would be for the trial court to follow each step in the analysis, there was no reversible error because the defendant failed to come forward with an argument on the third step. 287 Kan. at 278.

Delira's case is more like *Angelo* than *Davis*. Here, the district court did not refuse to allow Delira to proceed with the third step of the analysis. Instead, Delira asserted no objection to the State's explanation for striking the juror and made no attempt to show that it was pretextual. "Such an objection would have given the trial court an opportunity to clarify or to cure the purported defect." *Angelo*, 287 Kan. at 278. Under the circumstances presented here, we find the district court did not commit reversible error in denying Delira's *Batson* challenge.

## BIDS ATTORNEY FEES

Finally, Delira claims the district court erred in ordering him to pay $5,423.84 in BIDS attorney fees. The district court reviews the amount of BIDS fees imposed under an abuse of discretion standard. *State v. Hernandez*, 292 Kan. 598, 609, 257 P.3d 767 (2011). The applicable statute, K.S.A. 22-4513, states in part:

> "(a) If the defendant is convicted, all expenditures made by the state board of indigents' defense services to provide counsel and other defense services to such defendant or the amount allowed by the board of indigents' defense reimbursement tables as provided in K.S.A. 22-4522, and amendments thereto, whichever is less, shall be taxed against the defendant and shall be enforced as judgments for payment of money in civil cases.
> "(b) *In determining the amount and method of payment of such sum, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of such sum will impose*. A defendant who has been required to pay such sum and who is not willfully in default in the payment thereof may at any time petition the court which sentenced the defendant to waive payment of such sum or of any

unpaid portion thereof. If it appears to the satisfaction of the court that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family, the court may waive payment of all or part of the amount due or modify the method of payment." (Emphasis added.)

The Kansas Supreme Court has held that when a sentencing court assesses fees to reimburse BIDS, the court "must consider the financial resources of the defendant and the nature of the burden that payment will impose *explicitly*, stating on the record how those factors have been weighed in the court's decision." *State v. Robinson,* 281 Kan. 538, 546, 132 P.3d 934 (2006). The court emphasized that "[w]ithout an adequate record on these points, meaningful appellate review of whether the court abused its discretion in setting the amount and method of payment of the fees would be impossible." 281 Kan. at 546.

At the sentencing hearing, the district court ordered Delira to "reimburse [BIDS] for the amount [of attorney fees] actually paid by them, or $5,565, whichever is less." The journal entry of judgment assessed BIDS attorney fees in the amount of $5,423.84. After assessing the fees, the district court asked Delira's attorney if she wanted to "provide any information to the Court in compliance with *State* [*v.*] *Robinson* for the Court to determine the financial resources and burdens imposed by the BIDS application fee and attorney's fees?" Delira's attorney argued:

"[I]'d ask the Court to note that [Delira] is going to be incarcerated for a significant amount of time. He's looking at 146 months, which, with good time, is going to come out somewhere close to 12 years['] incarceration, Your Honor, somewhere in that range. And he's not going, unless he can get a job in the prison system, he's not going to have access to funds to pay on these fees. So I'd ask the Court to consider forgiving them, based on the length of incarceration for my client."

The State argued that Delira's incarceration was not a factor in assessing attorney fees. The district court then found:  "Well, based upon the arguments of counsel, the

10

Court's going to find that the imposition of the BIDS attorney's fees as well as the application fees does not impose an undue burden upon [Delira] at this time and therefore the Court will stand by its previous order."

On appeal, the State argues that the district court had "access to [Delira's] entire case file" and could make a determination based on the information in the file. The State points out that the case file included the financial affidavit and records that would show the judge was "aware" that Delira had no spouse or children to support and that he claimed only his mother as a dependent. While the State is correct in detailing what information was available to the judge to make a determination on BIDS fees, the State's reliance of what the judge was "aware" of from the record is irrelevant. Under *Robinson* and K.S.A. 22-4513, the judge must consider *explicitly, on the record at the time of the assessment* the financial resources of Delira and the burden the payment of the fees impose and how those factors weighed in the judge's determination. 281 Kan. at 546.

Here, the district court ordered Delira to pay the BIDS fees and then asked for information to satisfy *Robinson*. The district court may have weighed the financial resources of Delira and the burden of payments on him, but the district court did not consider the factors explicitly on the record at the time of the assessment. Thus, we vacate the assessment of the BIDS attorney fees and remand for the district court to consider Delira's financial resources and the nature of the burden that payment of the attorney fees will impose on him, explicitly stating on the record how those factors have been weighed in the court's decision. See *Robinson*, 281 Kan. at 546. To be clear, we do not vacate the assessment of the $100 BIDS application fee. See *State v. Hawkins*, 285 Kan. 842, 854, 176 P.3d 174 (2008).

Affirmed in part, vacated in part, and remanded with directions.

11